# COLUMBIAN NATIONAL LIFE INSURANCE COMPANY
## *v.* MILLER.

1. Where a policy· of accident insurance provided that it "does hereby insure . . against bodily injuries sustained through accidental means (excluding suicide, sane or insane, or any attempt thereat, sane or insane), and resulting directly therefrom, independently and exclusively of all other causes," and where on the trial of a suit brought by the beneficiary in the policy against the insurance company, to recover the amount named in it, for the accidental death of the insured, the testimony for the plaintiff tended to show that the sole cause of the death of the insured was accidental asphyxiation, and the testimony for the defendant tended to show that the death was due to apoplexy, or fainting and unconsciousness preceding asphyxiation, it was not error for the court· to submit to the jury, under proper instructions, the question whether the insured came to his death by accidental asphyxiation independently and exclusively of all other causes, or whether it was caused by apoplexy, or fainting and unconsciousness preceding asphyxiation.

(*a*) The verdict was supported by the evidence.

2. A policy of accident insurance provided that "written notice of an accident on account of which a claim may be made must be given to the company at its home office in Boston, as soon as may be reasonably possible, together with full particulars thereof and the full name and address of the insured," and the policy provided also that a like notice was to be given in case of "bodily injury or death." The policy did not contain a clause providing for its forfeiture in case of failure ·to give the notice as required. The insured was found dead in his bathroom, which was tightly closed, lying near the bath-tub, ·partly undressed, under circumstances from which the jury might have inferred that he died from accidental asphyxiation. The beneficiary did not give notice·of the ·death of the insured to the company until 18 days after his death, for the reason, assigned by her, that she had been sick in bed several days previous to the death of the insured, and was in a nervous condition for several weeks afterwards. *Held,* that it was not error for the court to submit to the jury the question whether the plaintiff had given the required notice ·as soon as reasonably possible under all the facts and circumstances; he having ·also charged them that if the notice was not so given, the plaintiff could not recover.

(*a*)₌ Nor was it error for the court to refuse to hold, as matter of law, that the policy was void because notice was not given until 18 days after the death of the insured.

(b) The verdict for the plaintiff was not contrary to law because the notice was not given until 18 days after the death of the insured; or for any other reason assigned.

*July 19, 1913.*

Action upon insurance policy. Before Judge Bell. Fulton superior court. August 8, 1912.

*Watkins & Latimer,* for plaintiff in error.

*Smith & Hastings,* contra.

HILL, J. Mrs. Josie B. Miller, the widow of Carlton H. Miller, as the beneficiary under a certain policy of accident insurance issued by the Columbian National Life Insurance Company to Carlton H. Miller on or about the 29th day of January, 1910, brought suit against the company to recover the amount named in the policy. The result of the trial was a verdict and judgment in favor of the plaintiff for the full amount named in the policy. The trial court having overruled a motion for a new trial, the defendant excepted. The policy sued on provided: "The Columbian National Life Insurance Company of Boston, Massachusetts, does hereby insure Carlton H. Miller against bodily injuries sustained through accidental means (excluding suicide, sane or insane, or any attempt thereat, sane or insane), and resulting directly therefrom, independently and exclusively of all other causes." It also provided: "Written notice of an accident on account of which a claim may be made must be given to the company at its home office in Boston, as soon as may be reasonably possible, together with full particulars thereof and the full name and address of the insured. Like notice of bodily injury or death on account of which a claim is to be made must be given to the company as soon as may be reasonably possible after the occurrence of the accident causing such bodily injury or death." There are two controlling issues in this case: (1) Was the death of the insured caused through accidental means (excluding suicide, etc.), and did it result directly therefrom, independently and exclusively of all other causes? (2) Was the policy void because the written notice required to be given to the company as soon as "reasonably possible after the occurrence of the accident causing such bodily injury or death" was not given until eighteen days after the death of the insured?

1. On the trial the issue first above stated was submitted to the jury, and their finding was in favor of the plaintiff. There seems to be no dispute that at the time of the death of the insured the

policy was of full force and effect, nor as to the amount of the liability of the defendant company, if liable at all. The plaintiff's evidence tended to show that the insured died about one o'clock p. m. on April 6, 1911. He was found dead in his bath-room, at about his usual lunch hour on the date named, undressed except as to his underwear, and the bath-room was filled with gas. It was the practice of the insured to take a bath in the middle of the day, after he came in from town. The plaintiff went to the bath-room and found it closed and gas was escaping. She and a servant opened the door and found the deceased lying on the floor of the bath-room, right bv the bath-tub, and the room was filled with gas. The deceased was lying as if he might have fallen against the bath-tub. The room had one window, which was closed when the plaintiff and the servant first entered. Gas was escaping from an instantaneous gas heater located in the bath-room and used for heating water. The heater has a "little pilot" that lights it, and which has to be turned on. "You light the pilot, and you turn the water and the gas on, and the pilot lights the gas itself. The gas and water are turned on at the same time; and then the pilot lights the gas and heats the water as it comes through." When the deceased was found the water was turned on and the gas was escaping. Partly burned matches were upon the bath-room floor near the heater. The deceased was drinking the night previous to his death, though he was not an habitual drinker. From this evidence for the plaintiff, we think the jury was authorized to find that the death of the insured was caused by accidental asphyxiation, independently and exclusively of other causes, although the testimony of the defendant tended to show that death had resulted from apoplexy. The insistence of the defendant is, that even if the death of the insured was due to asphyxiation, it was preceded by fainting and unconsciousness, and that those causes contributed to the accident, and, this being so, his death did not come within the provisions of the policy which would render the company liable in case of accidental death,—that the death thus occasioned did not result directly from accidental means, "independently and exclusively of all other causes." In the case of Freeman *v.* Mercantile Mutual Accident Association, 156 Mass. 351 (30 N. E. 1013, 17 L. R. A. 753), it was held: "An accidental fall causing peritonitis which results in death will render the insurer liable

under an accident-insurance policy limiting the insurer's liability to causes where an injury is the proximate cause of death, even although by reason of a former attack of the disease the deceased was liable to a recurrence of it." In a somewhat similar case it was held that an injury which resulted in hernia was the proximate cause of death from peritonitis which resulted from a surgical operation skilfully performed for the hernia as the only possible means of saving the life of the injured. Travelers Ins. Co. v. Murray, 16 Colo. 296 (26 Pac. 774, 25 Am. St. R. 267). So, in a case where death followed an external, visible, and bodily injury caused by an accident, it was held to be the result of such accident within the meaning of an insurance policy. National Benefit Asso. v. Grauman, 107 Ind. 288 (7 N. E. 233). In the case of National Benefit Asso. v. Bowman, 110 Ind. 355 (11 N. E. 316), it was held that intoxication, although a crime, was not necessarily the proximate cause of the death of one who was thrown from a wagon while intoxicated. In Manufacturers &c. Co. v. Dorgan, 58 Fed. 945 (7 C. C. A. 581, 22 L. R. A. 620), the insured was "seen on an island in the brook, playing a trout." Twenty minutes later he was discovered lying in the brook with his face downward, and submerged in six inches of water, dead. The bank was about 18 inches above the water, and there were in the water stones, egg-sized and smaller, upon which he might have struck his head. There were two bruises on his forehead. The policy in that case provided that it did not extend to any case except where the accidental injury was the sole cause of disability or death. Judge Taft, in delivering the opinion of the Circuit Court of Appeals, said: "We are of the opinion that in the legal sense, and within the meaning of the last clause, if the deceased suffered death by drowning, no matter what was the cause of his falling into the water, whether disease or a slipping, the drowning, in such case, would be the proximate and sole cause of the disability or death, unless it appeared that death would have been the result, even had there been no water at hand to fall into. The disease would be but the condition; the drowning would be the moving, sole, and proximate cause."

And so the jury were authorized to find, from the evidence in this case, that the insured was asphyxiated by escaping gas, and that this caused his death, independently and exclusively of his fainting or unconscious condition.

2. The next question for consideration is, whether the plaintiff, as the beneficiary named in the accident policy sued on, forfeited her right to sue and collect the amount named in the policy, by reason of her failure to give full notice of the accident to the defendant company at its home office in Boston as soon as was "reasonably possible," as provided by the policy. The testimony for the plaintiff tended to show that she gave the notice 18 days after the death of her husband, and that before his death she was sick in bed, and that after his death she was in a nervous condition for several weeks. There was also evidence tending to show that after the notice was given to the company, the plaintiff's attorneys received a letter from it, insisting that no liability attached to the company, because, as it insisted, the death of the insured was due to causes not covered by the policy; but stating that the company had instructed its district agent to submit proof of loss by the plaintiff if she so desired. The letter set up no contention of forfeiture for failure to give notice within a reasonable time, but denied all liability solely on the ground of the cause of the death. Nor did the policy itself contain any clause providing for its forfeiture in case of failure to give notice as required. The court submitted to the jury the question whether the plaintiff had given the notice required as soon as reasonably possible, under all the facts and circumstances; and charged them that if the notice was not so given, the plaintiff could not recover. On this point the court charged the jury: "Now, whether or not the plaintiff has complied with that provision of the contract, and, if not, whether or not a reasonable excuse has been given for a failure to comply with the terms thereof, is submitted to you along with the case, and you will take all the evidence and circumstances of the case and say by your verdict whether the plaintiff is entitled to recover or not." This charge is objected to on the ground, that it submitted to the jury the question whether or not a reasonable excuse had been given for a failure to comply with the contract relating to notice; and further, that there was no evidence showing any reason whatever for a failure to do so, and no evidence to support the charge. This ground of the motion is without merit. There was evidence tending to show that prior to and immediately after the death of the insured the plaintiff was sick and in a nervous state of health; and we think the court properly decided that it could not

say as a matter of law that the proper notice had not been given, but would submit to the jury the question as to whether the notice had been given as soon as reasonably possible, under all the circumstances of the case, and, if the notice was not so given, the plaintiff could not recover. The jury found for the plaintiff on all questions of fact submitted to them, and we can not say that their verdict is without evidence to support it.

In the case of *Southern Fire Ins. Co.* v. *Knight*, 111 *Ga.* 622 (36 S. E. 821, 52 L. R. A. 70, 78 Am. St. R. 216), a fire-insurance policy contained requirements and conditions the violation of which by the insured would work a forfeiture of the policy, and the policy contained a stipulation requiring the insured to furnish proofs of loss within sixty days after the fire, but did not make the failure to give such notice a ground of forfeiture; and under the terms of the policy the insurer was not liable to make payment until after sixty days from the receipt of such proofs of loss, the policy further providing that no suit thereon should be brought unless commenced within twelve months after the fire. It was held, that "if the insured furnished the required proofs of loss in time for at least sixty days to elapse between the date upon which they were furnished and the expiration of the twelve months limitation, the policy was not forfeited by a failure to furnish such proofs within sixty days after the fire occurred." In delivering the opinion of the court, Cobb, J., said: "It has been often held, and may now be considered as settled law, that if there is an express stipulation in a policy of fire-insurance that the furnishing of proofs of loss within a specified time shall be a condition precedent to a recovery, or that a failure to submit the proofs within the time limited in the policy shall forfeit the same, such failure on the part of the insured will be fatal to his right to recover. See 13 Am. & Eng. Enc. L. (2d ed.) 328, notes 7 and 8. There is not in the policy involved in the present investigation either a stipulation that the furnishing of proofs of loss within sixty days shall be a condition precedent to a recovery, or that the failure so to do shall operate as a forfeiture of the policy. While the decisions of the American courts are not entirely uniform on this question, the current of authority seems to be that in the absence of a stipulation providing that the furnishing of proofs within a designated time shall be a condition precedent to recovery, or that the failure to submit the

proofs within such time shall work a forfeiture of the policy, the failure so to do will operate simply to postpone the right of the insured to bring a suit until after he has furnished the proofs of loss required by the policy. This results from the familiar rule that forfeitures are not favored, and that a contract will not be construed to work a forfeiture unless it is manifest that it was the intention of the parties that it should have that effect." See 4 Joyce on Ins. § 3282. The fact that the policy in the instant case provides that it is made subject to the conditions and stipulations which are a part thereof does not distinguish it from the *Knight* case, supra, where the policy (as shown by the original record) contained the provisions that "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions, as may be endorsed hereon, or added hereto." In the case of *Harp* v. *Fireman's Fund Ins. Co.,* 130 *Ga.* 726, 728 (61 S. E. 704, 14 Ann. Cas. 299), this court reaffirmed the decision in the *Knight* case on this point, after reviewing it, and declined to overrule it. On the question of what is a reasonable time within which to give notice, see the following cases: Fidelity etc. Co. v. Courtney, 186 U. S. 342 (22 Sup. Ct. 833, 46 L. ed. 1193) ; Ward v. Maryland Casualty Co., 71 N. H. 262 (51 Atl. 900, 93 Am. St. R. 514) ; Remington v. Fidelity etc. Co., 27 Wash. 429 (67 Pac. 989) ; American etc. Co. v. Norment, 91 Tenn. 1 (18 S. W. 395) ; Germania Fire Ins. Co. v. Deckard, 3 Ind. App. 361 (28 N. E. 868) ; Carey v. Farmers etc. Ins. Co., 27 Ore. 146 (40 Pac. 91) ; Ætna Life Ins. Co. v. Fitzgerald, 165 Ind. 317 (75 N. E. 262, 1 L. R. A. (N. S.) 426, 112 Am. St. R. 232, 6 Ann. Cas. 551). In Donahue v. Windsor &c. Fire Insurance Co., 56 Vt. 374, where the policy provided that the notice should be given "forthwith," and the notice was not given for twenty-two days, it was held that it was a question of fact for the jury to say whether the notice was in compliance with the terms of the policy.

The other grounds of the motion for a new trial are without substantial merit.

*Judgment affirmed.    All the Justices concur, except Fish, C. J., dissenting.*