## FAIRCLOUGH v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Court of Appeals of District of Columbia. Submitted March 4, 1924. Decided April 7, 1924.)

No. 4016.

1. **Insurance ⬦646(6)—In action on accident policy, plaintiff has burden of proof.**

   In an action on a death claim under an accident policy, *held*, that plaintiff has the burden of showing that insured, while policy was in force, received a personal bodily injury which effected his death, directly and independently of all other causes, through external, violent, and purely accidental means.

2. **Insurance ⬦668(11)—Whether recovery could be had on accident policy held for jury.**

   On evidence that insured, a dental student, after watching, as part of his course, a classmate recover from an anæsthesia, became dizzy, fell, and fractured his skull, and died a week later as a result of fall, whether recovery could be had on an accident policy *held* for the jury.

3. **Insurance ⬦466—That vertigo caused fall will not prevent recovery on accident policy, where fall was proximate cause of injury.**

   Where a fall was the sole proximate cause of an injury, the fact that vertigo caused the fall will not bar a recovery on an accident policy.

Appeal from Supreme Court of the District of Columbia.

Suit by William Innis Fairclough against the Fidelity & Casualty Company of New York. From a judgment for defendant, entered on a directed verdict, plaintiff appeals. Reversed, and cause remanded, with directions to grant a new trial.

Emory B. Smith, of Washington, D. C., for appellant.

W. C. Clephane, J. W. Latimer, and G. L. Hall, all of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, VAN ORSDEL, Associate Justice, and MARTIN, Presiding Judge of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice. The plaintiff, William Innis Fairclough, now the appellant, sued the defendant, the Fidelity & Casualty Company of New York, now the appellee, upon an accident insurance policy issued by it to George Ellis Fairclough, plaintiff's brother, payable to plaintiff in event of the insured's death, if resulting from accidental causes of a kind defined in the policy. Plaintiff averred that at a time when the policy was in full force, the insured came to his death from causes within its terms; that all of the requirements of the policy had been fully complied with, but that the defendant had refused to pay the amount due thereunder. The company defended, denying that the insured had met his death from accidental causes of the kind described in the policy.

The issue was tried to the jury, but at the conclusion of the plaintiff's testimony the court directed a verdict for the defendant. That order is challenged by this appeal.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The relevant provisions of the policy defining the company's obligations, are as follows:

"Part I.   Insuring Clause.

"A Bodily Injury.—If the insured, while this policy is in force, shall receive a personal bodily injury (suicide, sane or insane, not included) which is effected directly and independently of all other causes through external, violent, and purely accidental means, and which causes at once and continuously after the accident total inability to engage in any labor or occupation, the company will pay the indemnities hereinafter provided for loss resulting therefrom.   *   *   *"

"Part II.   Specific Indemnity.

"If, within the limit of time named in this part and during the period of total inability to engage in any labor or occupation, any one of the following losses shall result necessarily and solely from said injury causing the said inability as is described in section A of part I, the company will pay, subject to the provisions of part VI:

"A.   For loss of life—said principal sum."

Accordingly, at the trial below, the burden of proof was upon the plaintiff to show that the insured, while the policy was in force, received a personal bodily injury which effected his death, directly and independently of all other causes, through external, violent, and purely accidental means.  And the question now upon appeal is whether the evidence which the plaintiff introduced in support of his claim was sufficient to entitle him to go to the jury.

[2] The plaintiff's evidence tended to prove the following facts:

The insured was a dental student at Howard University; on the day of his injury, from 9 to 10 o'clock a. m., he attended a clinic at the hospital, where a fellow student submitted to anæsthesia for experimentation; afterwards, from 10 o'clock a. m. until 2 o'clock p. m., he worked in the dental infirmary; he then returned to the hospital, in order to observe the patient who was recovering from the effects of the anæsthesia, that being a regular requirement in the dental course at the university.  When he arrived at the hospital the patient was just recovering from the anæsthetic and was talking somewhat incoherently, and the insured sat down upon the foot of the bed to observe him.  After remaining there about 15 minutes he arose and said, "Well, I think I will go boys," or "Boys, I am going over," and started out, but when approaching the door, in the words of a witness, "he made a kind of tripping move like he slipped, and immediately fell backwards, striking his head upon the floor."  The floor at that point was a smooth, dry, concrete floor, and there was nothing upon it to cause him to slip.  The insured suffered a basilar fracture of the skull as a result of the fall, and this caused his immediate prostration, followed by his death about a week later.  None of the witnesses present at the occurrence saw the exact cause of the slipping or the fall, but some days afterwards the insured told his physician that he had become dizzy while sitting upon the patient's bed at the hospital, and had started out of the room, when he fell.  One of the medical witnesses at the trial testified that in his opinion the fall resulted from "psychic shock," which he said was:

"A faint   *   *   *   produced by a nervous derangement temporary in character;   *   *   *   emotion seeing his classmate recovering from the anæsthe-

sia. * * * It might be any kind of emotion—fear, fright, sight, or so many things that might disturb the center."

The insured had not exhibited any signs of dizziness upon that occasion before he started to leave the room, and so far as was known he had not theretofore been subject to dizziness or vertigo, nor had he ever seemed to be affected in that way at previous clinics, where he had witnessed many operations requiring general anæsthetics.

It was conceded by the defendant at the trial that the insured was a healthy person up to and at the time of the accident, and that his fall could not have been caused by the anæsthetic administered to the patient at the morning clinic, nor by fumes remaining in the room in the afternoon. It was also conceded that the policy was in force at the time of the accident, and that its formal requirements had been complied with before the commencement of the action.

The insurance company maintains that the insured, when attempting to leave the room, suffered an attack of vertigo, which caused him to fall to the floor as he did; that otherwise he would not have fallen nor been injured; that the vertigo, an illness, was at least one of the active and efficient causes of the injury; and, consequently, that the injury was not "effected directly and independently of all other causes through external, violent, and purely accidental means." This view was accepted by the trial court, and its decision was based thereon.

[3] We think, however, that this conclusion was erroneous. Under the evidence the jury would have been entitled to find that the attack of vertigo, if one actually took place, was unexpected, unusual, and no more than a merely temporary disorder; that it had no direct effect upon the health or life of the insured; and that, even if it caused the insured's fall, the fall, and not the vertigo, was the sole proximate cause of the injury. And if the jury had found such to be the facts, it would follow that the alleged vertigo would not have barred a recovery upon the policy. The issue, therefore, should have been submitted to the jury.

This view is sustained by many authorities, among them Continental Casualty Co. v. Lloyd, 165 Ind. 52, 73 N. E. 824; Modern Woodman Accident Association v. Shryock, 54 Neb. 250, 74 N. W. 607, 39 L. R. A. 826; Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 73 S. W. 592, 61 L. R. A. 459, 97 Am. St. Rep. 560; and Ludwig v. Preferred Accident Insurance Co., 113 Minn. 510, 130 N. W. 5. In the case of Meyer v. Fidelity & Casualty Co. of New York, 96 Iowa, 378, 65 N. W. 328, 59 Am. St. Rep. 374, the policy in question insured against accidental injuries. The court said:

"It is also said in argument that the policy covers death from violent, external, and accidental means, and that the proximate cause of death in this case was not the fall, but some disorder with which the deceased was afflicted. It is quite clear, both on principle and authority, that, if the disorder which caused the fall was temporary and unexpected, the injury was violent, external, and accidental, and the whole matter was properly left to the jury for them to determine whether the disorder was of a temporary character."

In the case of Manufacturers' Accident Indemnity Co. v. Dorgan, 58 Fed. 945, 7 C. C. A. 581, 22 L. R. A. 620, it appeared that the insured

came to his death by drowning. The jury found that the insured was unconscious when he fell into the water, and that the unconsciousness was due to a temporary affliction which was entirely unusual with him. The court, by Mr. Justice Taft, said:

"We are of the opinion that in the legal sense, and within the meaning of the last clause, if the deceased suffered death by drowning, no matter what was the cause of his falling into the water, whether disease or a slipping, the drowning, in such case would be the proximate and sole cause of the disability or death, unless it appeared that death would have been the result, even had there been no water at hand to fall into. The disease would be but the condition; the drowning would be the moving, sole, and proximate cause."

The present policy was executed and delivered within the state of Massachusetts consequently the law of that state upon this subject is especially important. In the case of Bohaker v. Travelers' Insurance Co., 215 Mass. 32, 102 N. E. 342, 46 L. R. A. (N. S.) 543, the Supreme Judicial Court of Massachusetts dealt with an issue very similar to this. The policy there in question insured "against bodily injuries, effected directly and independently of all other causes, through external, violent and accidental means." It appeared that the insured, when delirious by reason of severe typhoid fever, was left alone momentarily by his attendant in a room with a single window, which was covered by a screen; that a little below the window was a balcony 5 feet wide, with protecting railing; that 30 feet beneath the balcony was rough and stony ground; that upon the return of the attendant to the room the screen was found torn from the window and the insured was found on the ground unconscious, with severe injuries, from which he died, and which, as experts testified, probably would have caused his death, even if he had not been suffering from typhoid fever. The action upon the policy was tried to the lower court without a jury. The defendant requested the court to rule (1) that the plaintiff was not entitled to recover as matter of law; and (2) that the death of the insured was not effected, directly and independently of all other causes, through external, violent, and accidental means. The court refused so to rule, and found upon the evidence for the plaintiff. Exceptions thereto were overruled, and the judgment was affirmed by the Supreme Judicial Court. Chief Justice Rugg, in delivering the opinion of the court, spoke in part as follows:

"The defendant's first request was denied rightly. 'Accidental means' is used in the contract of insurance in its common significance of happening unexpectedly, without intention or design. United States Mutual Accident Association v. Barry, 131 U. S. 100. The cause of injuries was not wholly conjectural as matter of law. It is plain that the immediate cause was the fall. This manifested itself in evidence which was violent and external. There was basis for the inference that it was accidental, as we have defined that word. It may have been that the deceased, in the heat of his fever and the warm season, in an effort to reach fresh air went to the balcony just outside his window, and there without premeditation or purpose or delirium, but only through weakness, lost his balance and went over the low railing, and received mortal harm. * * * It would have been error to rule as matter of law that the insured's death was not 'effected directly and independently of all other causes' through accidental means. The point of difficulty in this connection is whether the disease did not contribute to the injuries, or at least

was it not a cause co-operating with the fall in inducing the result. But the disease may have been found to have been simply a condition, and not a moving cause of the fatal injuries. A sick man may be the subject of an accident, which but for his sickness would not have befallen him. One may meet his death by falling into imminent danger in a faint or in an attack of epilepsy. But such an event commonly has been held to be the result of accident rather than of disease."

See, also, Collins v. Casualty Co., 224 Mass. 327, 112 N. E. 634, L. R. A. 1916E, 1203.

It has also been held in repeated decisions that the subject of "proximate cause" should generally be submitted to the jury. Patterson v. Ocean Accident & Guarantee Corporation, 25 App. D. C. 46.

The judgment of the lower court is accordingly reversed, with costs, and the cause is remanded, with directions to grant a new trial.