24097. CONTINENTAL CASUALTY COMPANY *v.* RUCKER.

DECIDED FEBRUARY 27, 1935.

*Harold Hirsch, Marion Smith, T. J. Long, M. E. Kilpatrick,* for plaintiff in error.

*M. G. Hicks, Leward Hightower, C. E. Kay,* contra.

MacIntyre, J. Ernest Rucker, at the date of his death, was the holder of a contract of accident insurance issued by the defendant, Continental Casualty Company. The plaintiff was the beneficiary designated therein. This policy provided, among other things, the following: "'Injury' as used in this policy means bodily injury which is ˙the sole cause of the loss and which is effected solely through accidental means while this policy is in force." The jury ˙found a verdict in favor of the plaintiff, and the defendant excepts to the overruling of its motion for a new trial.

We will first consider the general grounds of the motion. In determining whether or not the verdict of the plaintiff is supported by the evidence, it is pertinent to inquire first what losses are covered by the policy within the meaning of its terms. As pointed out above, the policy provides that "injury . . means bodily injury which˙ is the sole cause of the loss and which is effected solely through *accidental means."* It is well to state that since accident policies were first issued in this country in 1864 the courts of almost every State have had occasion to construe their terms, which have varied to no small extent. The adjudicated cases present many conflicts in construing policies with terms similar to those of the case at bar. Many of these cases involved policies which insured against "accidental injury" and "accidental death," as distinguished from the policy here under consideration, which provides against loss by bodily injury sustained through *accidental means.* The failure to keep in mind the distinction between these two clauses has led to many of these conflicts. This court, construing a policy containing similar terms to those of the case at bar, held, in *Fulton* v. *Metropolitan Casualty Ins. Co.,* 19 *Ga. App.* 127 (91 S. E. 228) : "When an accident policy insured against the effects of bodily injuries sustained˙ directly, solely, and exclusively through accidental means, resulting in the death of the insured, it was necessary, in an action thereon, to show that in the act which preceded the injury alleged to have caused his death something unforeseen, unexplained, or unusual occurred." Judge George, in his opinion, cited and reviewed the cases of *Cobb* v.

*Preferred Mutual & Accident Association,* 96 *Ga.* 818; *Atlanta Accident Association* v. *Alexander,* 104 *Ga.* 709; *Continental Casualty Co.* v. *Pittman,* 145 *Ga.* 641; pointing out that those cases construed the terms of the contract as quoted above.

This being an action on an accident policy, as distinguished from a life policy, the burden rests upon the plaintiff to show not only that the insured suffered an accidental death, but also that the injury which caused the death was one which was brought about through *accidental means.* In other words, the act which preceded the injury itself must have been an accident. The evidence in this case discloses that the insured deceased left Atlanta in company with a companion on the morning of August 5, 1933, for Chattanooga, Tenn., to attend a boiler-makers' union convention. The preponderance of the evidence shows that the insured, imbued with the holiday spirit upon his attendance at the convention, gave way to intemperance and consumed many various kinds of food, interspersed with various pints of corn whisky. After concluding the festivities of the day he retired to the boarding-house of one Mandy Strickland for rest and sleep. Between eleven and one o'clock he complained of an "awful headache" and called for aspirin. Thereafter, it was necessary that he retire to a bathroom where, according to the evidence of Mandy Strickland, he vomited profusely. Sometime thereafter Mandy Strickland heard a noise in his room "as he fell out of bed," and went to inquire what it was; whereupon Rucker replied, "It is me." She then discovered that Rucker was on the floor and "was not feeling so well" and wished to remain on the floor. She, with the assistance of another woman, put him back in the bed. In about an hour he was again discovered upon the floor. Around four o'clock thereafter he was found still on the floor, speechless, and seemed to have ceased breathing. He was taken to a hospital and on arrival was found to be dead. There was evidence of the doctor, who examined the deceased at the hospital, and of the attending nurse and of his companion, that the deceased had one small hematoma on his left eye, that is a knot of swollen area over his left eye "possibly a little larger than a nickel." These witnesses testified that they saw no abrasion on the forehead or any other bruise or injury except the one above mentioned. The undertaker who embalmed his body testified that he noticed right over his forehead an abra-

sion of the skin: "The epidermis, the skin, had been moved, I would say, due to a blow, in other words, it had been ruptured or broken; that was about an inch and a half opposite the right eye, between the two eyes, between the two eyebrows and the nose, in the center of the forehead, down between the eyes.

Rucker's body was removed to Atlanta, and six days after his death a post-mortem examination of his brain was made. The doctor testified that Rucker "had externally a bruise above his left eye, which was six centimeters in diameter or 2 inches; he had a bruise across his nose, right between his eyes, which was hemorrhagic, a bruise in front of his right ear, and no other external injuries were seen." He testified that on investigation of the brain and skull, he found that the hemorrhagic area as seen on the outside had continued into the skull proper, and found that there was a generalized hemorrhage of the brain. "I found a clot of blood as large as my thumb, where it had bled and clotted on the base of the brain." The testimony of the doctors conflicted as to the cause of this condition; some testifying that it was caused by a blow or external injury on the head, such as the deceased had; and others that it was caused through natural causes or apoplexy, that the injury on the head was not sufficient to have caused death.

From this evidence the jury were authorized to find that the insured had fallen from his bed and, in falling, had sustained a blow which was the sole and direct cause of his death. It would not matter that the cause of his fall was over-indulgence which might have produced dizziness or sickness, for it is generally held that where an insured is overcome by some bodily weakness or disease and as a consequence thereof falls and sustains an injury, there is liability, under a policy insuring against loss from injuries effected through accidental means. See Bohaker v. Travelers Insurance Co., 215 Mass. 32; *Columbia National Life Insurance Co.* v. *Miller,* 140 *Ga.* 346 (78 S. E. 1079, Ann. Cas. 1914D, 408). While this possibly is not the only result that the jury might have reached from the facts in order to find in favor of the plaintiff, yet the above finding would be sufficient to sustain the verdict, and we deem it unnecessary to state other grounds on which their verdict might be upheld.

■ The plaintiff in error assigns error upon the following charge of the court: "There is evidence in this case as to certain bruises

about the face and head of the deceased. Defendant says if there were bruises on him, they were not produced by accidental means, but were caused as a result of his diseased condition," as being an expression and intimation of an opinion as to what the evidence in the case disclosed, in violation of section 4863 of the Civil Code (1910). We can not agree that the above-quoted charge violates the mandates of the above-cited section. As we gather from the evidence contained in the record, there undoubtedly was a conflict therein as to whether the deceased had *bruises* about his head and face; the only evidence which seems to be undisputed was to the fact that he did have a small knot over his left eye. One of the defendant's contentions was, as gathered from the evidence, that the injury, if any, which caused the death of the deceased, was not caused through accidental means. The judge in the above charge seems to have been giving voice to this contention. He did not violate the mandate of code section 4863 by stating merely that there was some evidence of a fact, when it could not be disputed that there did exist such evidence in the case. Plaintiff in error cites the case of *Florida, Central and Peninsular Railroad Co.* v. *Lucas,* 110 *Ga.* 121, as authority for their position. In that case the Supreme Court condemned the following language as error: "There was evidence to show some slight physical bruises *which I think were not denied."* There was clearly an expression of opinion on the part of the trial judge that there were some slight physical bruises on the plaintiff. The language there used by the trial judge,—"which I think were not denied,"—makes the exception here *substantially* different from the one in that case. Also, the case of *Atlantic and Birmingham Railroad Company* v. *Hattaway,* 126 *Ga.* 333, is distinguishable from this case. The Supreme Court held the following charge to be error: "They (the defendant railroad company) contend further that the low place in the rails was further on toward Montezuma, and that the caboose had not gotten as far as that when the accident occurred," as being an expression on the part of the trial judge that there was a "low place" in the rail. It would have been substantially a different question here if the trial judge had said "The defendant contends that the bruises upon the body of the deceased were not sustained through accidental means," rather than what he did say, —that "defendant says *if* there were bruises on him, they were not

produced by accidental means, but were caused as a result of his diseased condition." It must be conceded that there was some evidence that there were bruises about the face and head of the deceased. Code-section 4863 does not prohibit the court from directing the attention of the jury to any particular portion of the evidence and instructing them on the contentions of the parties in regard to it. We do not think therefore that this exception presents a reversible error.

The court did not err in overruling the defendant's motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*