UNITED STATES, Appellant,

v.

Donald G. MOSBY, Appellee.

No. 84–1694.

District of Columbia Court of Appeals.

Argued April 25, 1985.

Decided July 3, 1985.

Daniel S. Seikaly, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Donald Allison, and Curtis E. Hall, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellant.

James McComas, Public Defender Service, Washington, D.C., with whom James Klein, Public Defender Service, Washington, D.C., was on the brief, for appellee.

Before NEBEKER, FERREN and TERRY, Associate Judges.

NEBEKER, Associate Judge:

Appellee Mosby was indicted on charges of second-degree burglary while armed, D.C.Code §§ 22–1801(b), –3202 (1981); armed robbery, *id.* §§ 22–2901, –3202 (1981); first-degree murder while armed, *id.* §§ 22–2401, –3202 (1981); and carrying a pistol without a license, *id.* § 22–3204 (1981). During the course of their investigation of the underlying crimes, Metropolitan Police officers lawfully seized clothing belonging to Mosby, including one tennis shoe with human blood on it and another with waterfowl feather fragments. Following hearings on, *inter alia,* Mosby's motion to suppress statements and physical evidence, Judge Pratt ruled on grounds of relevance that the government could not introduce the blood and feathers evidence at trial. The government appealed under D.C.Code § 23–104(a)(1) (1981). *See District of Columbia v. McConnell,* 464 A.2d 126, 130 (D.C.1983).

## I

On March 8, 1984, at approximately 11:00 a.m., police officers discovered the bodies of Bonnie and Bruce Glover in their apartment at 1645 13th Street, N.W. Mr. Glover was found on the living room floor with a single gunshot wound in his head. A trail of feathers led from there to the bedroom where Mrs. Glover was found face down on the bed, bound hand and foot, with a feather pillow over her head and a single gunshot wound in the back of her head. An autopsy revealed that the two had been killed at approximately 2:00 a.m. that morning by gunshots fired through pillows.

Several days later, the Director of Security for the First American Bank notified the police that a black male wearing a white knit cap had tried to use Mrs. Glover's automatic teller machine card at one of their branches on March 8 at 6:04 and 6:08 a.m. A videotape of the attempted transactions had been made by a surveillance camera.

The case did not develop further until April 25, 1984, when two deputy United States marshals became involved in an eviction at 3802 14th Street, N.W. During the course of the eviction, the movers discovered a bag containing several live rounds of ammunition, a hypodermic needle, and a holster for a small caliber pistol. Following questioning by the marshals, Denise McGrath, the tenant being evicted, volunteered information concerning the ammunition. She explained that on an earlier date, her boyfriend, appellee Mosby, and a friend had come to her apartment in an agitated state. Mosby was holding a pistol and credit cards and a driver's license bearing the name Glover. Miss McGrath recognized the name because of the extensive news coverage following the murders.

After speaking with Miss McGrath, the marshals contacted Detective Ann Fisher, who had been assigned to investigate the Glover murders. She responded to the scene and noticed that Miss McGrath was wearing a white knit cap. Miss McGrath indicated that the hat was hers but that Mosby had been wearing it during the preceding month. Later, she viewed the bank surveillance photographs and commented that the jacket worn by the individual resembled one owned by Mosby. She then gave Detective Fisher permission to search the bin where her belongings had been placed for storage following her eviction, and Detective Fisher seized several of Mosby's jackets and pairs of shoes. An FBI analysis revealed a trace of untypeable human blood on one shoe. On another non-matching shoe were found fragments of feathers which could be typed only as those of waterfowl. At the close of subsequent suppression hearings, the trial court concluded that this evidence was "too speculative" and ruled that the government would not be permitted to introduce it even though it was not unconstitutionally seized.

## II

■ We begin with the proposition that the determination of the relevance of proffered evidence is committed to the sound discretion of the trial court. *United States v. Kearney,* 136 U.S.App.D.C. 328, 329 n. 1, 420 F.2d 170, 171 n. 1 (1969). The trial court is accorded broad discretion under these circumstances "because of the absence of any concrete standard for the determination of relevance, and because of the endless variety of factual situations which arise." 1 C. TORCIA, WHARTON'S CRIMINAL EVIDENCE § 151 (13th ed. 1972). Although the government cites cases where courts found no abuse of discretion in the admission of certain evidence, those holdings cannot be read to mean that the trial courts were required to admit the evidence in those instances. Indeed, as the United States Court of Appeals has observed in sustaining the admission of blood type evidence, "While he might have ruled differently [*i.e.* excluded the evidence], we do not think that the trial judge exceeded his discretion when he admitted the testimony into evidence." *United States v. Kearney, supra,* 136 U.S.App.D.C. at 329 n. 1, 420 F.2d at 171 n. 1.

■ Further, there are numerous decisions which support Judge Pratt's ruling that the blood and feathers evidence did not appear to sufficiently link Mosby to the crime. *See, e.g., Letsinger v. United States,* 402 A.2d 411, 417 (D.C.1979) (error in admission of undershorts stained with untyped human blood recovered from defendant's bathroom day after homicide; no evidence that defendant had worn them on the night of the murder); *United States v. Stabler,* 490 F.2d 345, 348 (8th Cir.1974) (reversible error to admit jacket stained with untyped human blood recovered at defendant's direction several days after murder; recanted confession was sole evidence establishing that defendant had worn it on the night of the murder). In this case, the government's proffer established that a trail of goose feathers, but no trail of blood, was found linking the bodies of Bonnie and Bruce Glover. The feather fragment removed from Mosby's tennis shoe seven weeks later could be identified only as coming from waterfowl. The blood found on a non-matching shoe could be typed only as human, and there was no evidence that Mosby even owned, much less wore, the shoes on the night that the murders were committed. Accordingly, we cannot conclude on the record as presently constituted that Judge Pratt abused his discretion in refusing to allow the government to introduce the blood and feathers as evidence.

■ However, given the preliminary nature of the record—one derived from a pretrial omnibus hearing—it must be recognized that the trial judge's ruling necessarily was tentative; he is free to rule again on the relevance of the evidence in the context of the trial. In contemplation of law the trial court has done nothing more than rule on a proffer made during the pretrial hearing. The ruling is simply "an advisory opinion on admissibility of evidence if offered at trial." It is clearly not the law of the case. *United States v. Shields,* 366 A.2d 454, 456 (D.C.1976).

Accordingly, we affirm the pretrial order excluding the evidence without prejudice.

*So ordered.*