**UNITED STATES, Appellant,**

v.

**Ebony WILLIAMS, Appellee.**

**No. 97–CO–163.**

District of Columbia Court of Appeals.

Argued May 27, 1997.

Decided July 24, 1997.

James E. Boasberg, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, and Halsey B. Frank, Assistant United States Attorneys, were on the brief, for appellant.

Sandra Levick, Public Defender Service, with whom James Klein, and Samia Fam, Public Defender Service, were on the brief, for appellee.

Before STEADMAN, FARRELL and REID, Associate Judges.

REID, Associate Judge:

The government appeals from an order of the trial court denying its request to introduce certain evidence during the forthcoming trial of appellee Ebony Williams. We reverse in part and affirm in part.

## PROCEDURAL SUMMARY

Ms. Williams was indicted for the March 1995, stabbing death of Rufus Lawson, a friend of her grandmother.[1] Ms. Williams

---

1. The charges pending against her are second degree murder, in violation of D.C.Code §§ 22–

regarded Mr. Lawson as her "grandfather" and had lived in his apartment for approximately three years at the time of his death.

In June 1996, the government filed a notice of intent to introduce *Drew* evidence.[2] Subsequently, in September 1996, the government filed a first and second supplement to its notice. Specifically, the government indicated its intent to introduce at trial specified testimony from Mr. Lawson's niece, Jean Gardner; Vernon Lawson, grandson of Mr. Lawson; Teresa Middleton, Vernon Lawson's girlfriend; Grove Green, Mr. Lawson's friend and neighbor; and Officer Craig Marshall and Detective James Trainum.

On January 17, 1997, the trial court held a hearing on the government's notice of intent to introduce *Drew* evidence. At the beginning of the hearing, the government announced that its notice was more accurately described as "hearsay type evidence ... which involves, at least indirectly, implicitly potential bad acts on the part of Ms. Williams." The prosecutor also explained the government's prosecutorial theory as follows: "the defendant stabbed Mr. Lawson, not out of fear because he was trying to molest her, poke her with a knife, but rather out of anger because he had told her to get out of his apartment, having got fed up with her taking advantage of his hospitality." Moreover, based upon statements the defendant had made to the police, the government anticipated that the defense theory would be self-defense or accident, so that issues such as who was the first aggressor in the altercation would be relevant at trial.

· After fairly extensive argumentation, and colloquy between the trial judge and counsel, the trial court announced its ruling:

> The government is precluded from introducing any of the information included in the notice of intent to introduce *Drew*, first and second supplements, other than the defendant's use of marijuana on the night of the offense, and that's it.

The trial judge asked defense counsel to "draft an order."

Ms. Williams' trial was scheduled to begin on February 4, 1997. However, on February 3, 1997, the government gave notice of its intent to appeal the trial court's January 17, 1997, oral order. In its notice of appeal, the government made the required certifications for a pre-trial government appeal pursuant to D.C.Code § 23–104(a)(1), "that [the government] believes the evidence it is precluded from presenting as a result of the Court's orders constitutes substantial proof of the charges pending against the defendant, and that the instant appeal, notice of which is filed this date, is not taken for the purpose of delay."

After the government had noticed its appeal on February 3, the trial court issued its written order on the same day,[3] granting "[t]he government's request to introduce competent evidence that Ms. Williams was under the influence of marijuana on the night of the stabbing," but denying the government's request to introduce:

1) hearsay and non-hearsay evidence from the decedent's great niece, Jean Gardner, that the decedent 'got into serious financial difficulty on several occasions ... and frequently complained that the defendant took advantage of him by taking his food and money and by beating him up'[;]

2) hearsay and non-hearsay evidence from Vernon Lawson and Teresa Middleton that 'the defendant was disrespectful of the decedent, that she refused to obey the rules that he asked her to follow when staying in his apartment, and that the decedent complained that the defendant pushed him around and stole his money'....[;]

3) hearsay and non-hearsay evidence from Grove Green 'that the defendant was disrespectful of the decedent, and that the decedent complained to him about the defendant taking his food and money ... [and

---

2403, –3202 (1996), and voluntary manslaughter while armed, in violation of D.C.Code §§ 22–2405, –3202.

**2.** *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964), concerns the introduction of "other crimes" evidence during trial.

**3.** With the exception of a few modifications, the trial court issued the order drafted by the defense.

that] [s]hortly before he was killed, the decedent visited Green in his apartment and asked Green to call the police if Green heard any commotion from the decedent's apartment below'[;] and

4) defendant's statements to police detectives that she at times feels paranoid or that men are about to do something to her when she is high on marijuana.

## ANALYSIS

### I. The Jurisdictional Issue

■ We address, first, the jurisdictional issue raised by Ms. Williams.[4] She contends that the government's appeal must be dismissed because the trial judge considered her hearsay and relevancy issues to be "advisory only, not law of the case." She points to comments of the trial judge after her orders were entered characterizing them as "advisory" and not intended "to create law of the case." [5] Rather, said the trial judge, her rulings were intended "to assist what we knew [would] be a different [trial] judge in understanding what discussions there had been, while at the same time, allowing the parties to prepare for trial, anticipating the rulings." The government argues that, despite the trial judge's insistence that her ruling was only advisory, the written order is unequivocal, final, and appealable. We turn now to the applicable statute.

### The Government's Right To Appeal A Pretrial Evidentiary Ruling

■ D.C.Code § 23–104(a)(1) provides in pertinent part:

The United States ... may appeal an order, entered before the trial of a person charged with a criminal offense, which directs the return of seized property, suppresses evidence, or otherwise denies the prosecutor the use of evidence at trial, if the United States attorney ... conducting the prosecution for such violation certifies to the judge who granted such motion that the appeal is not taken for purpose of delay and the evidence is a substantial proof of the charge pending against the defendant.

This statutory provision accords the government a clear right to appeal evidentiary rulings of the trial court which exclude evidence that the prosecutor believes to constitute "substantial proof of the charge pending against the defendant." As we said in *District of Columbia v. McConnell*, 464 A.2d 126, 130 (D.C.1983), the government may "appeal pretrial evidentiary decisions involving both

---

**4.** Ms. Williams argues that the government's appeal is "fatally premature" under D.C.App. R. 4(b)(1) because it was filed prior to the issuance of the trial court's written order. We disagree. Trial in this matter was scheduled to begin on February 4, 1997. The government did not file its notice of appeal until 3:50 p.m. on February 3. Under the circumstances, the government cannot be faulted for filing its motion prior to the entry of a written order. Moreover, the trial court's written order did not deviate in substance from its January 17, 1997, oral ruling. District of Columbia Court of Appeals Rule 4(b)(1) specifically states that "[a] notice of appeal filed after the announcement of a verdict, decision, sentence, or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof." Furthermore, the government made the certification required by D.C.Code § 23–104(a)(1) in writing on February 4, 1997.

Ms. Williams has not demonstrated any prejudice to her by the government's notice of appeal prior to entry of the written order. Rather, she contends that there is "systemic prejudice" because the premature notice of appeal "disturbs the carefully constructed statutory balance be-

tween the government's right to appeal important pretrial rulings and the defendant's right to avoid harassment and delay from interlocutory appeals." That balance will not be disturbed by accepting the appeal as timely in the circumstances of this case. And the record before us is devoid of any hint that Ms. Williams has been subjected to harassment and delay due to the government's appeal. *West v. United States*, 346 A.2d 504 (D.C.1975), on which Ms. Williams relies is inapplicable to her situation. There, the court determined it had no jurisdiction because the appellant appealed his conviction before sentence had been imposed. Here, the government appealed based upon an oral ruling whose substance was confirmed by a written order within forty-five minutes of the government's notice of appeal. We note also that the result in *West* itself has been overturned by a subsequent amendment to D.C.App. R. 4(b)(1). Hence, we see no merit to Ms. Williams' argument that the government's notice of appeal was fatally premature.

**5.** The trial judge's comments were made on February 4, 1997, during a hearing to determine whether Ms. Williams' trial could proceed while the government's appeal was pending.

exclusionary and non-exclusionary rule issues" because "the legislative history of both D.C.Code § 23–104(a)(1) and 18 U.S.C. § 3731 'reveals a congressional intent that they should be read broadly'...." We construe § 23–104 broadly, also, because the government has no right to appeal acquittals of defendants, and pretrial rulings may become the law of the case.[6] Clearly under the broad construction of § 23–104(a)(1) the trial court's order "denies the prosecutor the use of evidence at trial." The government has filed the requisite certification under § 23–104(a)(1).[7] Thus, we conclude that § 23–104(a)(1) permits the government to appeal pretrial orders denying it the right to introduce specified evidence on the grounds that it is hearsay or lacks sufficient relevance to trial issues. *See United States v. Hammond,* 681 A.2d 1140, 1142–43 (D.C.1996). Moreover, as we recognized in *United States v. Mosby,* 495 A.2d 304 (D.C.1985), it may do so even if the order was "tentative" in the sense that the trial judge "is free to rule again on the relevance of the evidence in the context of the trial." *Id.* at 306.

Unlike in *United States v. Shields,* 366 A.2d 454 (D.C.1976), the trial judge's determination here was not merely "an advisory opinion on admissibility of evidence if offered at trial." *Id.* at 456. In its written form it was explicit and categorical: "ORDERED that the government's request ... to introduce evidence listed in its three pleadings is DENIED." The body of the order includes words such as "prohibit" and "cannot be introduced." Any reasonable person reading the order would conclude that it purports to preclude the government from introducing specified evidence at trial. Although the tri-

al judge retains the freedom to reconsider the rulings in the concrete setting of the trial, *Mosby, supra,* we conclude that each has the earmarks of an "order" sufficient to make each appealable under § 23–104.

## II. The Evidentiary Rulings

### Grove Green's Proposed Testimony

The trial court excluded the Grove Green testimony on the ground of "inadmissible hearsay and/or" lack of relevancy. Exclusion of this testimony on hearsay grounds constituted error.[8] It is admissible under the state-of-mind exception to the hearsay rule. In *(David) Clark v. United States,* 412 A.2d 21 (D.C.1980), we discussed the state-of-mind exception to the hearsay rule, and recognized that "[s]everal types of statements are admissible under the state-of-mind exception to the hearsay rule due to their presumed reliability and probative value." *Id.* at 25. Pertinent here is that a statement that "directly conveys the declarant's then-existing emotional state, e.g., 'I am afraid of X,'" is admissible under the state-of-mind exception. *Id.* Grove Green's proposed testimony is directed toward Mr. Lawson's state-of-mind on the day of his death in two respects. The principal testimony, as proffered, is that shortly "before he was killed, the decedent visited Green in his apartment and asked Green to call the police if Green heard any commotion from the decedent's apartment below." At least arguably, the statement reveals that Mr. Lawson was afraid that something harmful might occur in his apartment. Moreover, even if it is tenuous as showing actual fear by Mr. Lawson, asking Green to summon the police if he heard noise was an act the government may

6. "When a pretrial motion to suppress has been heard and decided ... that decision becomes the law of the case." *Jenkins v. United States,* 284 A.2d 460, 463 (D.C.1971) (citations and footnote omitted). *See also Wheeler v. United States,* 300 A.2d 713, 715 (D.C.1973), and *United States v. Dockery,* 294 A.2d 158, 163 (D.C.1972).

7. The government's certification is not subject to attack. As we said in *United States v. Jackson,* 441 A.2d 937, 939 (D.C.1982),

[a]bsent a clear expression of Congress, we hold that the prosecutor's certificate of no purposeful delay and substantial proof is not sub-

ject to attack so as to defeat the appeal. Any impact which the appeal may have on other rights of the accused must await trial court resolution and, if necessary and appropriate, be reviewed in the event of conviction.

8. The government argues that the proposed Grove Green testimony is not an assertion "because it was not offered for its truth, [and] even if it were hearsay, this testimony squarely fits within the state-of-mind exception to the hearsay rule." We do not consider whether the proposed testimony constituted an assertion since it is clearly admissible under the state-of-mind exception to the hearsay rule.

reasonably argue was inconsistent with an intent by Lawson to molest or assault Ms. Williams sexually. The evidence therefore reflected his state of mind and was relevant to who was the first aggressor in the subsequent killing. "Where a defendant in a murder case has raised a defense of accident, suicide, or self-defense, the victim's mind is of particular concern to the jury." *Id.* Exclusion of Lawson's anticipatory request for Green to call the police was error on the record before the trial court.

### Detective James Trainum's Proposed Testimony

■ The trial court appears to have excluded Detective James Trainum's proposed testimony on grounds of hearsay and relevancy, concluding that Ms. Williams' statement to the detective that she "sometimes feels paranoid or believes that men are about to do something to her when she is high on marijuana, is not sufficiently probative to render such a statement admissible on the issue of her state-of-mind, the reasonableness of the defendant's fear or the reasonableness of her actions." To the extent the trial court excluded the proposed testimony on hearsay grounds, that was error because the statement is admissible under the admission of a party-opponent exception to the hearsay rule. *Chaabi v. United States,* 544 A.2d 1247, 1248 (D.C.1988). Moreover, assuming that the defense theory at trial is self-defense, Ms. Williams' statement would be relevant to the reasonableness of any fear she harbored toward Mr. Lawson by suggesting that such fear was exaggerated by her own drug use. Hence, the categorical exclusion of Detective Trainum's proposed testimony was an abuse of discretion. If the defense presents a self-defense theory, Ms. Williams' statement will be relevant and not out-weighed by any undue prejudice shown so far.

### The Remaining Testimony

■ Finally, we will not reverse the trial court's exclusion of evidence that Mr. Lawson had financial problems, that he had com-

plained of Ms. Williams' taking advantage of him,[9] and that she had been seen acting "disrespectful" toward him. "An evidentiary ruling by a trial judge on the relevancy of a particular item is a highly discretionary decision that will be upset on appeal only upon a showing of grave abuse." *Roundtree v. United States,* 581 A.2d 315, 328 (D.C.1990) (citations and internal quotation marks omitted). While the trial court is free to reconsider each of these rulings in the context of the trial, *Mosby,* 495 A.2d at 306, we find no abuse of discretion in the pretrial determination that none of the proffered items of testimony were probative on the issues likely to be disputed at trial.

*Affirmed in part and reversed in part.*

---

9. The government agrees that testimony that Lawson had complained of being cheated and taken advantage of by Williams would surmount hearsay objection only if admitted to show Lawson's state of mind, not whether in fact he had been cheated.