Roland BYNUM, Appellant,

v.

UNITED STATES, Appellee.

No. 96–CF–1356.

District of Columbia Court of Appeals.

Argued Jan. 18, 2000.
Decided May 30, 2002.

Ferris R. Bond, Washington, DC, for appellant.

John S. Irving, IV, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the briefs were filed, and John R. Fisher, Elizabeth H. Danello and Frank F. Krider, Assistant United States Attorneys, were on the brief for appellee.

Before RUIZ, GLICKMAN and WASHINGTON, Associate Judges.

RUIZ, Associate Judge:

Appellant was convicted of possession of marijuana,[1] and possession with intent to distribute crack cocaine,[2] and received consecutive sentences of one year for marijuana possession and twenty to sixty years (all but ten years suspended) for possessing crack cocaine with intent to distribute. On appeal he challenges several evidentiary rulings that he claims prevented him from presenting evidence that he was a crack addict in order to rebut the government's evidence that he intended to distribute crack cocaine. We reverse the conviction for possession with intent to distribute crack cocaine based on the trial court's exclusion of appellant's proffered surrebuttal witness, and remand for a new trial.

**I**

The incident that formed the basis of the convictions is straightforward and was not disputed by appellant. During its case in chief, the government established that after appellant offered to sell marijuana to undercover police officers, he was apprehended and discovered to be holding, in addition to several ziplock bags of marijuana, a yellow M & M candy bag containing twenty-three ziplock bags of crack cocaine. At trial, appellant admitted to possessing the marijuana and cocaine, but he denied that he intended to sell the cocaine. Instead, he claimed that he was a crack cocaine addict who sold marijuana to support his habit, and that he had just stolen the crack cocaine for his own use from another drug dealer's stash of drugs, which he had observed was hidden under a car. He did not intend to sell it, however, because he "loves it too much," and would not think of parting with it, as it would last him all weekend.

During cross-examination, the government asked appellant whether he had told the pretrial services officer, who interviewed him the day after he was arrested, about his addiction to crack cocaine. After some equivocation, appellant said that he did.[3] The government then called the pre-

---

1. D.C.Code § 33–541(d) (1998).

2. D.C.Code § 33–541(a)(1) (1998).

3. The cross-examination on this point follows:

 Q: And do you remember telling them when they asked you if you were currently using drugs, you told them heroine [sic] and methadone but you never said a word about crack cocaine, did you?"
 A: I thought I did. I thought I did.
 Q: Well, take a second and think about it now.
 A: I don't recall. I don't know if I told them I did. I don't know, you know. I don't know. I'm saying it's in my, it looked like it's in my jacket. You can call my probe [sic] officer. He can tell you that.
 Q: Well, sir, let's just think for a second. The last drug that you used was crack.
 A: Yes, sir.
 \* \* \*

 Q: So that would have been the drug uppermost in your mind that you would have told the person who interviewed you from Pretrial Services, correct?
 A: Yes, sir.
 Q: In fact, you would have told that to Vince Watson who was the [p]retrial interviewer from Pretrial Services.
 A: Yes, sir. You know, you know what? I don't know if I told. I probably did tell him. I can't recall, you know, I can't recall. I just can't recall. you know, I was upset, you understand, I was sick, I was ill, you understand. I knew I wasn't going home. I wanted to hurry up and get to the jail to get some medical attention.
 Q: Sir, you're a crack addict. You're really—
 A: I'm a crack addict and a heroine [sic] addict, yeah.
 Q: And you were really addicted to crack . . . on March the 8th. If you were really

trial services officer, Vincent Watson, and showed him a folder with notes on his interview with appellant. When Watson began to testify, defense counsel objected on "relevance grounds," saying that Watson needed to testify from memory.[4] Watson said that he could not independently remember the interview, but that referring to the folder would "refresh his recollection." After the prosecutor showed Watson the pretrial services folder, Watson reviewed its contents, the prosecutor retrieved it, and Watson testified as to the content of the pretrial services interview with appellant. According to Watson, when asked about current drug usage for which he had received drug treatment, appellant answered that he had used drugs within the last three days and that he was "on heroin[ ] and methadone" and "receiving treatment at D.C. General."[5] Defense counsel did not object to this procedure, nor did he voice an objection later, when the trial court referred to the witness' present recollection having been refreshed by reference to the folder. Notwithstanding that Watson had said during direct examination that his memory of his interview with appellant could be refreshed by reviewing the folder, during cross-examination Watson said that he did not specifically remember talking to appellant after his arrest—although he did remember seeing him at the time—and that all his information came from what was in the folder. There was no objection or request to strike Watson's earlier testimony about his interview with appellant. The folder was not admitted into evidence and is not part of the record on appeal. After Watson's testimony on cross-examination, the trial court announced that the parties had rested and that there would be no more testimony.

The next day, defense counsel sought to call appellant's parole officer as a surrebuttal witness, proffering that the officer would testify that "on numerous occasions" appellant had told him that he was addicted to crack cocaine, that by signing a form, appellant indicated that he had used crack cocaine, and that drug tests confirmed that appellant had used crack cocaine. Defense counsel stated that the officer was available to testify and that the prosecutor

---

addicted to crack, that would have been the drug that was uppermost in your mind when you told him these are the drugs that I'm using.

DEFENSE COUNSEL: Argumentative.

THE WITNESS: I probably did tell him.

THE COURT: Sustained. Ask your next question.

PROSECUTOR: Q: You certainly would have told him that you used crack cocaine.

A: As far as I'm concerned, I did tell him.

4. Defense counsel also stated that "there's nothing there inconsistent in my mind," and asked to approach the bench. Although the transcript reflects that there was a bench conference, it does not include the substance of the conference.

5. Watson's testimony follows:

Q: Do you remember what questions you asked Roland Bynum with regard[ ] to his drug abuse history?

A: Yes.

Q: What was the question?

A: Is he on any current, any drugs right now and has he received treatment in the past or the present?

Q: What was his response?

A: That he was currently on heroine [sic] and methadone. He was receiving treatment at D.C. General.

Q: Did he indicate whether he was using drugs now or what time frame was he talking about?

A: He said within three days ago.

Q: Do you remember if Mr. Bynum had ever indicated he used crack cocaine?

A: No. If he would have stated that, I would have wrote it down in the folder. That's my job.

Q: And why would you have done that?

A: Whatever the ... defendant says when he's interviewed, we are required to put in the folder. That's how we're trained.

previously had an opportunity to talk to him. The government objected, arguing that the request came too late and that the prosecutor had just been informed about the surrebuttal witness, and talked to him briefly outside the courtroom. The trial court observed that appellant's "whole case was built around the fact that [appellant is] a drug addict" and that evidence of his drug addiction could have been presented earlier. Defense counsel disagreed, arguing that a "new matter" had been introduced by the government's rebuttal witness (Watson), *i.e.*, an inference that appellant was not a cocaine addict from the fact that he had not told the pretrial services investigator that he was addicted to crack cocaine. The trial court denied the request, saying that appellant testified that

> [i]n all probability [appellant] did tell him [that he was a cocaine addict]. [Watson's testimony is] rebutting that he didn't tell him. I'm not going to go back and forth, back and forth, back and forth.

When defense counsel requested that the prosecutor not be allowed to argue that appellant was not addicted to crack cocaine, the trial court appeared to agree that the prosecutor could not argue that appellant was not a crack addict, but permitted the prosecutor to argue that appellant had not mentioned his addiction to the pretrial services investigator, so that his non-addiction to cocaine was "a fair inference from the evidence." In closing argu-

ment, the prosecutor did, in fact, make that its first argument to the jury, as one of five reasons why the jury should disbelieve appellant's claim that he possessed the crack cocaine for his own use and not for sale.[6]

## II.

On appeal, Bynum claims that the trial court committed reversible error in three rulings related to the government's rebuttal witness, Watson. Specifically, appellant argues that Watson's testimony was impermissible hearsay because it was based on the information in the folder, that the information was confidential and could not be used at trial, and that introduction of appellant's statements to Watson, given after he had received *Miranda* warnings, was an impermissible use of his post-*Miranda* silence. Appellant also contends that the trial court abused its discretion in denying his request to present his parole officer as a surrebuttal witness on the issue of his addiction to crack cocaine.

We reverse on the issue of appellant's request to present surrebuttal testimony. We discuss first the questions surrounding Watson's testimony and then turn our attention to the proffered surrebuttal witness.

### A. The government's rebuttal witness

 Appellant contends that Watson's testimony included inadmissible hearsay statements. In his testimony, Watson re-

---

**6.** The other reasons given by the prosecutor were 1) that when the officers first saw appellant, he was flagging a car in an active attempt to sell drugs on the street, and not merely, as appellant claimed, responding to an opportunistic buy from the undercover officers on his way to the store; 2) that it was unlikely that, if appellant actually possessed the cocaine for his own use, he would have been carrying the drugs in 23 ziplock bags, which was more consistent with retail distri-

bution; 3) that appellant was holding the cocaine in his right hand when he was tackled and arrested by the police officer, which suggested that he had it in his hand all along for sale, instead of in his pocket, which would have been more consistent with appellant's claimed possession for personal use; and 4) that, contrary to appellant's contention, it was unlikely that he would have been able to steal such a valuable stash of drugs without detection.

lated how appellant had told him that he was addicted to heroin and methadone. Appellant did not object to the statements as hearsay. In any event, the statements were admissible as admissions of a party opponent. *See United States v. Williams,* 697 A.2d 1244, 1249 (D.C.1997). Appellant also did not renew his objection [7] or move to strike when Watson, during cross-examination, stated that he did not remember his interview with appellant, suggesting that it was the contents of the folder, and not Watson's refreshed recollection, that was the source of the testimony. Under the circumstances, where Watson had initially said during direct examination that he remembered his interview with appellant after it had been refreshed by his review of the folder, the trial court did not plainly err when it did not *sua sponte* strike the testimony that Watson had just given, as refreshed recollection, on direct examination.[8] *See Coates v. United States,* 705 A.2d 1100, 1104 (D.C.1998) (plain error must be "(1) obvious or readily apparent ... and (2) so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial") (internal quotations and citation omitted).

Next, appellant contends that the trial court erred in admitting statements appellant gave to Watson because they were given in the context of a pretrial services interview. Although D.C.Code § 23–1303(d) (2001) provides that "information contained in the [pretrial] agency's files ... shall not be admissible on the issue of guilt in any judicial proceeding," it expressly contemplates that "such information may be used ... for the purposes of impeachment in any subsequent proceeding." [9] Appellant initially equivocated about whether he had told Watson of his cocaine addiction, but his eventual testimony at trial, as the trial court determined, was that he had told Watson during the pretrial interview that he was addicted to crack cocaine. Watson, however, denied that appellant had included crack cocaine when he mentioned his addiction to heroin and methadone. Whether appellant's statement to the pretrial services officer could be admitted under D.C.Code § 23–1303(d) depends on whether it was impeaching.[10] The government concedes that the prosecutor did not, as he should have, first present to the trial court appellant's pretrial statement that the prosecutor intended to use to impeach appellant's trial testimony in order to obtain a ruling that the proffered statement would, in fact, be impeaching. *See (Michael) Henderson v. United States,* 632 A.2d 419, 434 (D.C. 1993) ("Before impeachment by omission is properly permitted, the trial court is required to make a threshold determination

---

7. As noted, appellant had objected at the outset of Watson's direct examination that he could not remember the pretrial services interview and was merely testifying about what was in the folder.

8. The government argues, in the alternative, that the substance of appellant's statements memorialized in the pretrial services folder would have been admissible as a business record or as past recollection recorded. It is unnecessary to decide the issue, and as mentioned, the pretrial services document is not part of the record.

9. Watson testified that when appellant "signed the [pretrial services] folder, he stated

that he understood all the questions that we asked him would be used in determining the release conditions and any violation of or any inconsistency in information he told me that day could be used against him in court."

10. It is true, as the government contends, that Watson's testimony of what appellant told him pretrial directly contradicted appellant's testimony of what he told Watson. But what Watson *thought* appellant's pretrial statement meant (*i.e.,* that appellant was not addicted to cocaine) is not impeaching if appellant did not intend that meaning when responding to the question he was asked.

that the defendant's pretrial statement omitted a material circumstance which the defendant mentions later but which also would have been natural for the defendant to have mentioned in the prior statement."). Defense counsel did not specifically mention D.C.Code § 23–1303(d), but does appear to have objected that the pretrial statement was not impeaching. Based on the incomplete record we have,[11] we cannot say that the essence of the claim made on appeal was not preserved because appellant did object that the pretrial statement was not impeaching, but neither can we review the trial court's implicit ruling that it was impeaching and therefore permissible under D.C.Code § 23–1303(d). Because we reverse on another ground, we need not resolve this issue to dispose of the appeal.

■ The last claim with respect to Watson's testimony is that appellant's failure to mention his cocaine addiction was not admissible because it came after he had received *Miranda* warnings. Thus, if his statement is admitted, he would be penalized for exercising his right to remain silent. This claim was not asserted in the trial court and is reviewable only for plain error. Appellant's argument would have merit if indeed he had remained silent in reliance of the *Miranda* warnings he was given. *See Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).[12] But he did not. Instead, he answered the pretrial services officer's question. Whether or not appellant's pretrial statements were impeaching, what is of consequence for purposes of *Miranda* is that at trial it was his statements, not his silence, that were used against him. *See Hill,* 404 A.2d at 531–32 (noting that where defendant does not remain silent, *Miranda* does not give him a right to remain silent "selectively"). We conclude there was no plain error in admitting the statements appellant gave after he received *Miranda* warnings.

B. *Appellant's proffered surrebuttal witness*

■ We are troubled by the trial court's denial of appellant's request to present his

---

**11.** As noted earlier, see *supra* note 4, the transcript does not include the bench conference held after defense counsel asserted that "there is nothing there inconsistent." Therefore, we do not know the substance of the trial court's ruling on the issue, but assume that the trial court must have considered that appellant's statement during the pretrial interview impeached his in-court testimony. The government asserts it would have been "natural" for appellant to have mentioned his cocaine addiction, citing *Hill v. United States,* 404 A.2d 525 (D.C.1979). That conclusion is not apparent from the transcript we do have. Watson's compound question to appellant during the pretrial services interview, whether he was taking drugs "right now ... *and* received treatment in the past or the present," see *supra* note 5, would not necessarily have elicited a response that appellant was addicted to cocaine if he had not also received treatment for his addiction.

**12.** The government argues that *Miranda* does not apply because the pretrial services inter-

view was not a custodial interrogation by a law enforcement official and, even if it was, it fell within the "routine booking exception" to the *Miranda* rule. These arguments miss the mark because those standards are applicable in determining when *Miranda* warnings must be given. That is not the issue here, where *Miranda* warnings had been given before the pretrial services interview. The Supreme Court's concern in *Doyle* was that, once a person is advised of the right to remain silent, the person's silence is not necessarily probative of anything other than the fact that the person has chosen to exercise that right; to infer otherwise, would undermine the purpose of the *Miranda* warning. *See Doyle,* 426 U.S. at 618, 96 S.Ct. 2240 ("It would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence [after receiving *Miranda* warnings] to be used to impeach an explanation subsequently offered at trial.").

parole officer as a surrebuttal witness to counter the implication from Watson's testimony that appellant was not, as he claimed at trial, addicted to crack cocaine. The trial court denied the request as coming too late, stating that appellant had the chance to present the parole officer's testimony as part of the defense case. We disagree with the trial court that the parole officer's testimony about what appellant had reported to him concerning his cocaine addiction would have been admissible before appellant's trial testimony was contradicted by Watson. Appellant's statements to his parole officer were hearsay, and appellant's testimony briefly referred to his parole officer as a source of *confirmation* of his cocaine addiction. See *supra* note 3. As such, they were inadmissible prior consistent statements unless they were being used to rebut a charge of recent fabrication. *See* D.C.Code 14–102(b) (2001) ("A statement is not hearsay if the declarant testifies at the trial ... and is subject to cross-examination concerning the statement and the statement is ... (2) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the witness of recent fabrication ... Such prior statements are substantive evidence."). The implication that appellant had fabricated his cocaine addiction for the benefit of his defense at trial did not arise until Watson testified, in rebuttal to appellant's testimony, that appellant had not mentioned cocaine addiction during the pretrial services interview. As defense counsel argued, Watson's testimony introduced a new matter—a suggestion that appellant had fabricated his cocaine addiction. It was only then that the parole officer's testimony about appellant's prior consistent statement to the officer about his addiction to cocaine became admissible.[13] In light of the trial court's erroneous assumption that the parole officer's testimony about appel-

lant's prior consistent statements could have been presented earlier, and the importance of that testimony to appellant's defense, we conclude that the trial court erred in denying appellant's request to present his parole officer in surrebuttal.

As the trial court recognized, appellant's cocaine addiction was the heart of his defense to the more serious of the two offenses, possession with intent to distribute cocaine. The prosecutor apparently thought that Watson's testimony was his most potent refutation of that defense because his first argument to the jury in closing was that appellant's contention that the crack cocaine found in his grasp was for his own use could not be believed because he had not revealed his cocaine addiction to Watson during the pretrial services interview, when he admitted to using heroin and methadone. We do not say that if the jury had heard the parole officer's testimony, it necessarily would have believed that appellant was addicted to crack cocaine or that, even if they believed that he was so addicted, they would have taken the next step, and also believed that appellant would therefore never part with the cocaine. The prosecutor presented four other reasons why the jury should disbelieve appellant on this point. See *supra* note 6. But it is the jury's job, not ours, to evaluate appellant's credibility. On this record, we conclude that the trial court's erroneous ruling so gutted the defense that we cannot say with fair assurance that the verdict was not influenced by the error.

*Reversed and remanded.*

---

**13.** Even if defense counsel could have called the parole officer during the defense case, the foundation for calling the parole officer in

order to introduce appellant's prior consistent statements was not laid until Watson rebutted appellant's trial testimony.