## 56846. LIFE INSURANCE COMPANY OF GEORGIA v. DODGEN.

BIRDSONG, Judge.

Suit to recover double indemnity on accidental death. The facts of this case show that appellee, Mrs. Dodgen is the widow of the insured James Dodgen. Dodgen was employed by the Georgia Power Company as an electrician. On the day of his death, Dodgen was working on an electrical transformer standing on an A-frame approximately eight to ten feet off the ground. The transformer had three power lines each normally carrying 2,400 volts. Two were disconnected and one apparently was still charged. Dodgen was working on the two uncharged lines, disconnecting them from the transformer. There is a dispute in the evidence as to whether he came into close vicinity of the third charged line and might have been exposed to a charge of some

degree by being in the field surrounding that wire. There was no evidence of a high voltage shock manifested by burns. Dodgen was heard to utter a cry or scream. Witnesses close to him saw him either straighten up or from an upright position make clutching grasps at the A-frame without success and fall from the A-frame to a gravel surface. One witness stated Dodgen fell on his feet but crumpled. Another simply saw Dodgen fall and after losing sight while trying to come to his support, saw Dodgen lying face down on the gravel. Dodgen apparently was alive for a time after the fall. He was observed to inhale several deep breaths. During mouth-to-mouth resuscitation and when oxygen was being administered by a rescue unit, Dodgen seemed to regain some color. Efforts at resuscitation proved fruitless, including direct injection into the heart by needle of a stimulant in the emergency room at the hospital.

After death, an autopsy was performed on Dodgen and it was determined that he had died of a cardiac tamponade. This involved the leakage of blood from the ascending aorta directly into the pericardial sac. The presence of blood in the pericardial sac so constricted the space available to the heart that the heart was unable to constrict and relax thus thwarting the pumping function of the heart. A quantity of blood also was found in the pleural cavity wherein are contained the lungs. At a point where the ascending aorta exits the pericardial sac, evidence of a hemorrhagic condition was found. The physical evidence was consistent with a dissecting aneurysm. At the point of the hemorrhage, evidence of fatty plaques was found, indicating a weakness in the aorta. There was testimony that such a condition, i.e., plaques in the inner lining of the aorta, was evidence of an on-going disease, arteriosclerosis. There was other testimony that at Dodgen's age of 58 years the presence of plaques was consistent with the aging process. The doctor performing the autopsy, based on symptomology, believed there was a dissecting aneurysm, and that the cause of death was a cardiac tamponade resulting from a dissecting aneurysm. Inasmuch as a dissecting aneurysm was not positively manifested, the aorta was removed from the body of the deceased and forwarded to the

examiner's superior for microscopic study. Following the microscopic study, the pathologist telephoned the result of his examination to a co-employee who had witnessed the autopsy. The co-employee reduced the contents of that conversation to a letter and forwarded the same to the doctor who performed the autopsy and prepared the death certificate. That letter became a part of the files of the case. The letter indicated that in the opinion of the pathologist, the microscopic study of the aorta did not disclose a dissecting aneurysm. The blood in the pericardial sac could have resulted from the needle prick, from leakage, or from an aneurysm. There was also evidence offered that an aneurysm could have resulted from arteriosclerosis as an on-going disease, from a weakened condition of the aorta caused by old age, or by ripping or tearing caused by deceleration force occurring when Dodgen struck the ground or floor from a height of 8-10 feet. There was other evidence that Dodgen had undergone fairly frequent periodic physicals, none of which disclosed a circulatory disease other than an elevated blood pressure. The appellee, Mrs. Dodgen, offered evidence that her husband was a strong, healthy individual who had never given any evidence of disease or physical infirmity or pain. The appellant, Life Ins. Co. of Ga. admitted liability as to the life insurance portion of its coverage and remitted the same but denied the double indemnity portion based upon accidental death. Following demand by Mrs. Dodgen, this suit was filed for the $25,000 additional accidental death coverage. The jury found for Mrs. Dodgen and that verdict was made the judgment of the court. Life of Ga. brings this appeal enumerating nine alleged errors. *Held:*

1. In its first enumeration of error, Life of Ga. argues that the trial court erred in denying its motion for directed verdict at the conclusion of evidence by Mrs. Dodgen. Appellant's second enumeration relates to the denial of a motion for judgment nov. Both enumerations involve a determination of whether there was any evidence which made a factual issue to be passed upon by the jurors. The trial judge has no right whatever to weigh the evidence, nor to decide any issue of fact. Before he could legally direct a verdict for the defendant, he must find from the

evidence that there was no evidence of any kind supporting plaintiff's position. *Montgomery v. Pacific &c. Co.,* 131 Ga. App. 712, 714 (206 SE2d 631). The evidence authorized but did not demand the jury to find that the cardiac tamponade was caused by application of external, violent and accidental force (i.e., the fall), and that Dodgen's death was not caused directly or indirectly, wholly or partly, by any bodily infirmity or disease. Evidence, although strongly supportive of appellant's contentions, was disputed, and the law is settled that evidence strongly supporting, but not demanding, a particular finding does not warrant a directed verdict. *Jenkins v. Gulf States Mtg. Co.,* 138 Ga. App. 835 (227 SE2d 522); see *E-Z Go Car Div. of Textron v. Kuhlke Const. Co.,* 141 Ga. App. 711 (234 SE2d 339). These two enumerations are without merit.

2. In its third enumeration of error, appellant urges that the trial court erred in allowing any evidence of a dissecting aneurysm as to either the presence or the absence thereof. This enumeration is based upon an argument that in her admissions, Mrs. Dodgen admitted that death was caused by a cardiac tamponade secondary to a dissecting aneurysm and she therefore could not offer evidence to dispute this admission. Mrs. Dodgen, on the other hand, contended that her admission only extended to the language contained in the autopsy and did not admit that the autopsy "spoke the truth." It is clear that the sole issue in the case was whether death resulted solely from or in combination with a diseased aorta involving a dissecting aneurysm, a leakage of blood resulting from a weakness of the aorta caused by the aging process, an aneurysm caused by deceleration force in the fall, or the needle prick, or an electrical shock, and provided such force amounted to an external violent, accidental force within the terms of the policy of insurance. Thus, it is indisputable that the evidence was most relevant and competent, if not otherwise prohibited by the asserted admission.

The question of the intent of the parties in the request for and the ultimate admissions by Mrs. Dodgen was in dispute and that dispute was resolved by the trial court. We will not substitute our judgment for that

exercised by the trial court where there is some support for the trial court's conclusion. The object of all legal investigations is the discovery of truth. The rules of evidence are framed with a view to this prominent end, seeking always for pure sources and the highest sources. Code Ann. § 38-101. Questions of relevancy of evidence are for the court. *Johnson v. Jackson,* 140 Ga. App. 252, 255 (230 SE2d 756). The trial court did not err in allowing this evidence. This enumeration is without merit.

3. Enumerations 4 and 5 urge error by the trial court in allowing the oral findings of the pathologist, relayed by letter through an intermediary to the physician who conducted the autopsy. It is urged that the findings of the pathologist are "double hearsay."

The facts show that none of the three parties involved, the examining physician who performed the autopsy, the intermediary who was present at the autopsy and prepared the letter detailing the microscopic pathology report telephonically relayed to him, and the physician who performed the microscopic examination of the aorta, were present at trial as witnesses. The testimony of all three was presented by way of deposition. When the appellant offered the deposition of the examining physician, appellant objected to the letter and its contents. Appellee (Mrs. Dodgen) insisted upon the whole of the deposition being read to the jury. Furthermore, it appeared from the depositions of both the physician who performed the autopsy and the witness, that although the symptomology indicated a dissecting aneurysm, there was no visible confirmation of this defect and therefore the aorta was sent to another physician for verification. Notwithstanding the failure of the pathologist to find a dissecting aneurysm, the opinion of the examining physician remained that the cause of death was a cardiac tamponade secondary to a dissecting aneurysm.

It is the law of this state that where either party introduces part of a document or record, the opposite party may read so much of the balance as is relevant. *Jones v. Grantham,* 80 Ga. 472, 477 (5 SE 764); Code Ann. § 38-703. Nothing could be more relevant in this case than the cause of death. As to the asserted hearsay qualities of

the oral report and the letter incorporating that report, we note that it was the responsibility of the physician who performed the autopsy to ascertain the cause of death. Though that official had an opinion as to the cause of death, he wanted verification of his opinion. Thus, it appears that the subsequent report which became a part of the records of the autopsy report explained the course followed by the examining physician in reaching his opinion and formed a part of the background for the professional expert opinion as to the cause of death. The witness was qualified as a physician expert in the realm of medicine and the human body, to testify from his expertise as to his examination and the opinions flowing from that examination. This included his diagnosis, an explanation of the medical terms used and the basis for his diagnosis. *Cowart Trucking Co. v. Stone,* 129 Ga. App. 327, 328 (3) (199 SE2d 608); *Argonaut Ins. Co. v. Allen,* 123 Ga. App. 741, 744-745 (182 SE2d 508). The fact that other expert opinions were considered by the physician in reaching his ultimate conclusion does not render the evidence inadmissible. The hearsay aspect merely affects the weight and credibility of this evidence. *City of Atlanta v. McLucas,* 125 Ga. App. 349 (2) (187 SE2d 560). This enumeration is without merit.

4. Enumeration No. 8 contends that the trial court erred in charging that a defect occurring as a product of the normal aging process would not be a disease having the effect of nullifying the double indemnity coverage for death resulting from an accident incident to such defect. The basis for the enumeration was that there was no evidence supporting such a charge. Appellant does not argue that the charge contains an incorrect statement of law. As stated in Division 1 of this opinion, we have concluded that there was some evidence pointing to the cause of death as being connected with the normal aging process. The evidence giving rise to such an issue, it was not error to charge upon that issue. This enumeration is without merit.

5. In Enumeration of error No. 6, appellant argues that the trial court improperly shifted the burden of proof from appellee to appellant. The trial court in substance charged that the burden of proving an accidental death

rested upon Mrs. Dodgen and that once she had met that burden, the burden then shifted to the insurer, appellant, to show that an exclusionary clause in the policy applied so as to exclude liability.

The charge of the court stated the general rule in this state, that where the beneficiary has established a prima facie case of death by accident, the burden shifts to the insurer to show that the beneficiary is barred or precluded from recovery under the policy's exclusionary provisions. See *Cotton States Mut. Ins. Co. v. Amer. Mut. Liab. Ins. Co.,* 140 Ga. App. 657 (231 SE2d 553); *Nationwide Mut. Fire Ins. Co. v. Collins,* 136 Ga. App. 671 (222 SE2d 828); *Mutual Life Ins. Co. v. Bishop,* 132 Ga. App. 816 (209 SE2d 223); *Interstate Life &c. Ins. Co. v. Wilmont,* 123 Ga. App. 337 (180 SE2d 913).

On the other hand, appellant relies upon a different but related principle of law which provides that under a life insurance policy with an accidental death feature, the burden of proving the accidental death feature is on the beneficiary where the definition of "accidental death" in the policy is "death caused directly and independently of all other causes by accidental bodily injury," or words to that effect. See *United Ins. Co. v. Monroe,* 115 Ga. App. 747 (156 SE2d 99); *Progressive Life Ins. Co. v. Smith,* 71 Ga. App. 157 (30 SE2d 411); *Overstreet v. Metro. Life Ins. Co.,* 69 Ga. App. 459 (26 SE2d 115); *Green v. Metro. Life Ins. Co.,* 67 Ga. App. 520 (21 SE2d 465); *Riggins v. Equitable Life Assur. Society,* 64 Ga. App. 834 (14 SE2d 182); *Continental Cas. Co. v. Rucker,* 50 Ga. App. 694 (179 SE 269).

As we read the language in the contracts involved, the rule advanced by Life of Ga. is not applicable, and the rule as charged by the court is the correct one. There are two policies having bearing on this issue. One is the policy issued to the deceased while he was an employee of Ga. Power Co. The other is the group policy issued to Ga. Power. Both of those policies provided coverage for loss of life "as the result of bodily injuries due to external, violent and accidental means." Both policies provide an exclusion stating it as a "limitation" in one and as an "exception" in the other. Both the "limitation" and the "exception" provide that payment will not be made for accidental

death caused directly or indirectly, wholly or partly, by bodily infirmity. Thus, as we read the policies, there is no specific definition of "accidental death" in either policy except that it must have resulted from bodily injuries inflicted by external, violent and accidental means. Both policies contained an exclusion. The trial court charged the jury that in order for Mrs. Dodgen to recover she had the burden of showing such an accidental death. In accordance with the accepted rule, once Mrs. Dodgen met that burden, the burden of going forward to show that the death fell within the exclusion or limitation fell upon the insurer. The charge of the court placed the burden of proof upon the proper parties. There is no merit to this enumeration.

6. In its seventh enumeration of error, appellant argues that the trial court improperly charged that exclusions in insurance policies are to be construed most strongly against the insurer and that where the policy would bear two interpretations, the one adopted should be the one which sustains indemnity.

As pointed out in the preceding division of this opinion, the trial court properly charged on the meaning and effect of exclusions inasmuch as appellant, in effect, was relying upon the exclusionary language in its policies. Moreover, appellant urged that the exclusionary language should be read together with the definition of accidental death whereas appellee argues that the two provisions should be considered separately. In view of this diversity, we are not persuaded that the trial court was not correct in requiring the jury to adopt the interpretation which sustains the claim for indemnity. See *Nationwide Mut. Fire Ins. Co. v. Collins,* supra, pp. 675-676. We find no error in this charge.

7. The last two enumerations of error complain that the court erred in charging on the effect of the normal aging process, and the denial of appellant's motion for a new trial. As to the excepted charge, appellant argues that there is no evidence to support that charge. We disagree. Though the evidence was much in dispute, Mrs. Dodgen presented testimony that clearly authorized the jury to attribute the hemorrhagic condition to the presence of platelets in the aorta, a condition which could

have resulted either from a disease or the aging process. This being an issue for the jury, it was not improper for the trial court to charge on the law pertaining to that issue.

8. Appellant's motion for new trial was based upon the same alleged errors as discussed above. For the reasons stated in this opinion, it was not error for the trial court to deny the motion for new trial.

*Judgment affirmed. Bell, C. J., and Shulman, J., concur.*

ARGUED OCTOBER 30, 1978 — DECIDED JANUARY 5, 1979 — REHEARING DENIED JANUARY 23, 1979 — 

*Dickey, Whelchel, Miles & Brown, Richard A. Brown, Jr.,* for appellant.

*Hutto, Palmatary & Magda, J. S. Hutto,* for appellee.