Morris J. WARREN, a/k/a Morris
Saunders, Appellant,

v.

UNITED STATES, Appellee.

No. 83–869.

District of Columbia Court of Appeals.

Argued Oct. 2, 1985.
Decided Sept. 22, 1986.

Blair Brown, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief for appellant.

Ariadne Symons, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton, and Mark J. Biros, Asst. U.S. Attys., were on the brief, for appellee.

Before MACK, BELSON and STEADMAN, Associate Judges.

**PER CURIAM:**

Appellant Morris Warren was convicted of kidnapping while armed, D.C.Code §§ 22–2101, –3202 (1981), two counts of kidnapping, *id.* § 22–2101, two counts of rape, *id.* § 22–2801, and assault with intent to commit sodomy, *id.* §§ 22–503, –3502. He was sentenced to five concurrent terms of imprisonment, the largest being two sentences of ten years to life on each of the rape charges, followed by a consecutive sentence of five to fifteen years on one of the two kidnapping counts. In this, the third appeal to come before us in this case,[1] appellant contends that the trial court erred in (1) finding a government witness psychologically unavailable to testify and, hence, in admitting her prior recorded testimony; (2) excluding from evidence allegedly explanatory, mitigating passages of letters written by appellant, the incriminating portions having already been admitted as part of the government case; (3) denying appellant's motion to dismiss for lack of a speedy trial; (4) prohibiting the impeachment by omission of another government witness; and (5) denying appellant's motion for judgment of acquittal on the three kidnapping counts. Finding no error, we affirm all convictions.

Appellant's first challenge is to the admission of one of the three victims' prior recorded testimony on the basis of the trial court's finding that she was "psychologically unavailable" to testify. Our decision reversing appellant's convictions after his second trial, *Warren I, supra* note 1, 436 A.2d 821, was the first case in this jurisdiction to recognize psychological unavailability of a witness as a proper ground, in extreme circumstances, for the admission of prior recorded testimony. *Id.* at 829–30.

---

1. We reversed appellant's convictions from his first trial due to a prejudicial misjoinder with his then codefendant, John Davis. *Davis v. United States,* 367 A.2d 1254 (D.C.1976), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 114 (1977). After our remand, we reversed appellant's convictions again, this time due to a number of erroneous and prejudicial evidentiary rulings in his second trial. *Warren v. United States,* 436 A.2d 821 (D.C.1981) (*Warren I*). The present appeal is from appellant's convictions after his third trial. Although a dozen victims were abducted in what became known as the "Green Vega" rape cases, appellant's convictions relate to only three of these incidents, one of which took place on June 19, 1972, and the others at different times on November 20, 1972. Because the facts and history of the case are amply stated in our two previous opinions, we do not repeat them here.

Appellant contends that, because we approved the trial court's appointment of an independent psychiatrist to obtain a second opinion as to unavailability in *Warren I*, we issued a directive that this procedure be followed in all future cases. *Id.* at 829. *Warren I* does not support appellant's argument. There the trial court determined that it needed "additional evidence to convince [it]" on the issue of psychological unavailability. *Id.* On the unusual facts of the present case, the trial court was satisfied, and not unreasonably so, by the testimony of the expert government witness, Dr. Shapiro.

■ The trial court was not making its determination in a vacuum. It had the benefit of an extensive psychological history of the witness contained in the record of the second trial. Thus, in addition to his own tests of the witness, the government expert reviewed the testimony of the two other experts who had reached the conclusion that the witness was psychologically unavailable to testify in *Warren I*. The psychological history already established in court, as well as Dr. Shapiro's own tests, persuaded him that the witness' condition had deteriorated from that which rendered her unavailable on the previous occasion. Dr. Shapiro expressly identified as positive each of the four factors bearing on the psychological unavailability of a witness: the probability of psychological injury as a result of testifying, the degree of the anticipated injury, the expected duration of the injury, and whether the expected psychological injury is substantially greater than that of the average victim of a rape, kidnapping or terrorist act. *Warren I, supra* note 1, 436 A.2d at 830 n. 18. Dr. Shapiro was a highly trained forensic psychologist to whose qualifications appellant made no objection at trial. Dr. Shapiro's own findings, coupled with his evaluation of the testimony from appellant's second trial, put before the trial court evidence sufficient to verify the relevant factors "in the context of each other, as well as in the context of the nature of the crime and the pre-existing

psychological history of the witness." *Id.* Equally indispensable, appellant had been afforded a full opportunity to cross-examine the witness at his first trial, the transcript of which formed the prior recorded testimony at issue here. *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980). Although the testimony of an independent court-appointed psychiatrist will usually be the proper foundation for a finding of psychological unavailability of a witness, we cannot say that such foundation was necessary on the peculiar facts of the present case.

Appellant's second contention concerns the introduction into evidence of prejudicial excerpts from several letters written by him, prior to his third trial, and directed both to the victim who was psychologically unavailable to testify and to the prosecutor. These letters were mainly of a religious nature, but they also contained statements which the government extracted and introduced as confessions. The trial court, despite appellant's efforts, excluded the remainder as irrelevant. Appellant argues that the evidentiary rule of completeness entitled him, once parts of these letters had been introduced, to put in the remainder "in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance[s]." VII WIG-MORE ON EVIDENCE § 2113 at 653 (Chadbourne rev. 1978). We disagree.

■ The rule of completeness is not absolute. It allows a party to introduce only so much of the remainder of a document or statement already received as is germane to an issue in the trial. *Life Insurance Co. v. Dodgen*, 148 Ga.App. 725, 729, 252 S.E.2d 629, 633 (1979). As WIG-MORE, notes, if the material offered is not independently relevant, the trial court has discretion to exclude any additional parts of the utterance unless they concern the same subject and explain the part already admitted. *Id.,* § 2113 at 656; *see also Travelers Insurance Co. v. Creyke*, 446 S.W.2d 954, 957 (Tex.Civ.App.1969). The trial court properly excluded portions of

appellant's letters which explained "the frame of mind, the religious convictions, the attitude of [appellant]," but which were "quite irrelevant" to the "confessions or admissions" introduced by the government.

In this court, appellant argues that certain excluded statements show that his expressions of remorse were not prompted by his own active wrongdoing, but rather by his failure to prevent the other participants from committing the crimes. His proposed interpretation of the letters is by no means self-evident. Despite this, appellant's current theory of relevance was never suggested to the trial court. Furthermore, appellant never identified at trial the particular passages he now picks out from what is lengthy and otherwise concededly irrelevant material. Instead, at trial, appellant indiscriminately sought to introduce the entire letters without any useful indication of what they were intended to prove and without their relevance, if any, being apparent. In these circumstances, we cannot say that the trial court abused its discretion in excluding material other than the incriminating passages. *United States v. Mosby,* 495 A.2d 304, 305 (D.C.1985); *Johnson v. United States,* 452 A.2d 959, 960 (D.C. 1982) (per curiam); *Reavis v. United States,* 395 A.2d 75, 78–79 (D.C.1978).

■ Third, appellant claims that he was denied a speedy trial. We rejected this claim with respect to his second trial in *Warren I, supra* note 1, 436 A.2d at 836. The question before us, therefore, is whether the fifteen and a half months period between our remand in *Warren I* and the commencement of appellant's third trial crossed the constitutional boundaries. We remanded *Warren I* on October 9, 1981; on June 2, 1982, appellant agreed to a continuance; he filed his motion to dismiss for lack of speedy trial on February 7, 1983, just three weeks before his third trial began. The trial court found that appellant had waived his rights until he first raised the speedy trial issue on January 26, 1983. Appellant maintains that his acquiescence up to that point was based on the govern-ment's "illusory promises of [a government witness'] future availability." The record, however, reveals no such promise by the government, but only an indication that the witness "might" be available to testify. We conclude from the length of the delay, the reasons for the delay, appellant's relatively dilatory assertion of his rights, and the lack of prejudice other than the delay itself, that the interval between our remand in *Warren I* and appellant's third trial did not violate appellant's Sixth Amendment right to speedy trial. *Id.,* 436 A.2d at 833–36; *see also Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

■ Neither of appellant's remaining claims of error warrants extensive discussion. The trial court did not abuse its discretion in prohibiting the impeachment by omission of one of the three victims, when her testimony in appellant's third trial did not concern material circumstances which it would have been natural for her to mention in her prior testimony. *Hill v. United States,* 404 A.2d 525, 532 (D.C. 1979), *cert. denied,* 444 U.S. 1085, 100 S.Ct. 1042, 62 L.Ed.2d 770 (1980). Nor did the trial court err in denying the motions for judgment of acquittal on the kidnapping counts. Appellant was placed at the scene of three separate but related offenses committed with an almost identical modus operandi over a period of several months. Evidence showed that he held the butcher knife which was used to threaten one victim; he held the second victim's legs while she was raped by two other participants in turn; and he lay on the third victim and ejaculated upon her. A reasonable mind could conclude beyond a reasonable doubt that appellant had "guilty knowledge," rather than "mere presence," at each kidnapping offense. *Patterson v. United States,* 479 A.2d 335, 338 (D.C.1984); *see also Shelton v. United States,* 505 A.2d 767, 769–70 (D.C.1986). Accordingly, the evidence was sufficient to convict.

*Affirmed.*