Milton COX, Appellant,

v.

UNITED STATES, Appellee.

No. 04–CF–258.

District of Columbia Court of Appeals.

Argued April 5, 2006.

Decided May 4, 2006.

Lee Richard Goebes, Public Defender Service, with whom James Klein, Sandra K. Levick, and Jennifer C. Daskal, Public Defender Service, were on the brief for appellant.

Jamilla Hoard, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, and John R. Fisher, Assistant United States Attorney at the time the brief was filed, Thomas J. Tourish, Jr., Perham Gorji, and Kathleen J. Monaghan, Assistant United States Attorneys, were on the brief for appellee.

Before SCHWELB and FARRELL, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

At the conclusion of a jury trial, appellant, Milton Cox, was convicted of carrying a pistol without a license ("CPWL"), D.C.Code § 22–4504(a) (2001), possession of an unregistered firearm ("UF"), *id.*, § 7–2502.01, unlawful possession of ammunition ("UA"), *id.*, § 7–2506.01, unlawful possession of drug paraphernalia ("PDP"), *id.*, § 48–1103(a), and unlawful possession of a controlled substance (marijuana), *id.*, § 48–1103(a).[1] Appellant contends on appeal that the trial court erred in refusing to admit the testimony of an arresting officer on two grounds: (1) it was hearsay, and (2) its admission in any event was not compelled (as appellant maintains) under the rule of completeness.[2] We agree that the trial court erred in both respects, but we conclude that the errors were harmless. Thus, we affirm all convictions.

## I.

On a day in July 2003, at around 5:00 p.m., veteran officers Stephen Franchak and Wayne David of the Metropolitan Police Department (MPD) were patrolling in uniform in a marked police car in the vicinity of Rhode Island Avenue and First and T Streets, N.W. They saw a red car driven by a man, later identified as appellant, go through a red light at the intersection of First and T and turn right onto T Street. Because of the traffic, the officers were unable to follow appellant immediate-

ly, but they caught up with him as he pulled up to a curb at the corner of North Capital and Seaton Streets, N.W. Officer Franchak asked appellant for his driver's license. A check of the license revealed that it had been suspended. Officer Franchak ordered appellant out of the car and arrested him.

After removing Bruce Marshall (a co-defendant) from the passenger seat, and Steve Crump and Larry Brown from the back seat, both officers saw the handle of a black-colored, semi-automatic handgun (later found to be loaded) sticking up between the driver's seat and the console. The officers also found two rounds of ammunition in the center console and one large ziploc bag containing numerous small blue ziploc bags in the glove compartment. In the trunk, the officers found ten rounds of ammunition, a handgun holster, and a large black plastic bag containing 110.3 grams of marijuana.

At trial,[3] appellant testified that on the day before his arrest he had gone to a firing range in Upper Marlboro, Maryland to practice shooting. After leaving the firing range, appellant said, he placed the loaded gun between the center console and the driver's seat. Appellant denied that one could see the handle protruding up from between the seat and the center console. On his way home from the firing range, according to appellant, he picked up dinner for his family at his mother's re-

---

1. Appellant was sentenced to two years in prison followed by three years of supervised probation for CPWL, and to 180 days of imprisonment for each of the UF, UA, PDP, and possession convictions, all of which were to run concurrently.

2. In his opening brief, appellant also contended that the prosecutor misled the jury and that the prosecutor's elicitation of testimony regarding appellant's post-arrest silence entitled appellant to relief. In his reply brief,

however, appellant withdrew these two contentions.

3. One day before the trial began, the trial court held a hearing on appellant's motion to suppress all tangible evidence and statements, seeking to exclude all the evidence found in his vehicle and the statements he made to police after those items were recovered. After hearing testimony and argument by both sides, the trial court denied the motion to suppress.

quest, but upon arriving home he forgot to bring his gun into the house when he brought the dinner in.

Appellant further testified as follows: The next morning, after dropping his mother off at work, he encountered his friend "Marco" while at a convenience store. Marco asked appellant if he would give him a ride to a family member's house. Appellant agreed. When Marco entered appellant's car, he was carrying a black plastic bag. Upon reaching First Street, N.W., appellant saw Brown and Crump and stopped to pick them up. Marco got out of the car and asked appellant to come back later to pick him up. As Marco was leaving the car, appellant asked him to put appellant's Play Station video game system, which was on the back seat, into the trunk, in order to make room for the new passengers. While remaining in the car, appellant opened the trunk with the latch next to the driver's seat, whereupon Marco put the game system in the trunk, closed the trunk, and walked away. Shortly after that, appellant saw Marshall and stopped to pick him up.

After appellant was arrested, the officers placed him on the ground in front of the squad car and began to search the car. Appellant testified that when he saw the officers looking around the driver's seat, he realized that he had left his gun in the car, called to one of the officers (Officer David), and explained that the gun was in the car because he had gone to the firing range the night before and had forgotten about the gun after putting it in the car. Appellant also told Officer David that the gun was registered in Maryland and not in the District of Columbia, and he admitted that he did not have a license to carry a gun in the District of Columbia. Appellant also denied ever possessing or seeing any of the ziploc bags or the marijuana.

## II.

During the government's direct examination of Officer Franchak, the prosecutor asked, "Did [appellant] have a permit with him to carry the gun you located in the car?" Officer Franchak responded, "Not to my knowledge." On cross-examination, defense counsel asked Officer Franchak if he had ever checked to determine whether appellant held a Maryland permit for the firearm, to which the officer replied, "No ma'am." On redirect, the prosecutor asked Officer Franchak, "Did [appellant] ever tell you that he had a permit for the gun?" Officer Franchak replied, "Not that I recall, no."

During cross-examination of Officer David, defense counsel requested permission to ask questions of Officer David that were outside the scope of direct. When asked to explain the nature of the proposed inquiry, counsel replied: "The government had asked Officer Franchak whether or not my client ever said that he had a permit for the gun, anything about him having the gun, and that this officer, that my client had that gun in this car because he went to the firing range. It goes to refute that Franchak basically said my client never told anyone about the gun or that he knew it was there or it was-" After government counsel objected, the trial court ruled: "You can call the witness in your own case. But I don't think a defendant can offer the defendant's statement through a witness. It's hearsay but we'll address it later. Not through this witness, if at all. We'll discuss the admissibility further."

After the redirect of Officer David, the trial court made a final ruling as to whether defense counsel could call David to refute Officer Franchak's testimony.

Court: And I want to raise, again, it's my understanding the prosecutor asked Officer Franchak did the defendant ever

tell you he had a permit. And although it was a leading question, there was no objection to it. And I don't believe a defense statement can come in through the witness. It's called hearsay. So it wasn't just a matter of scope.

Defense counsel: Your Honor, I think what I am basing my exception to the motion to the hearsay rule would be on impeachment. There was actually more than one question asked. There were two questions asked concerning that. The inference now that the jury has-

Court: What was the second question?

Defense counsel: I'm sorry.

Court: I know the prosecutor-

Defense Counsel: The first was in reference to Mr. Marshall, that's why. But I think it was-

(Pause.)

Court: It was clearly an improper question from the prosecutor. It was a leading question at a minimum, but there was no objection. But nonetheless, it's not—*it's not necessary under any rule of completeness whether he told the officer he was at the firing range.* [Emphasis added.]

Government: Your Honor, he only said that to Officer Wayne David. There [were] no statements made to Officer Franchak, so it doesn't go to the impeachment of Officer Franchak in any way.

Court: Very well. But in any event-

Defense Counsel: May I respond, Your Honor?

Court: Yes.

Defense Counsel: We don't have any testimony that Officer Franchak wasn't present when he made the statement. So I don't know if it's that correct, he could have—Officer Franchak could have overheard it.

Court: All right. You'll have—I'm ruling it's not admissible for the reasons stated.

## III.

Appellant contends that the court's exclusion of the testimony sought by the defense from Officer David inevitably led to an erroneous inference by the jury that appellant had remained silent at the time of arrest when, in fact, appellant had offered an innocent explanation for the presence of the weapon. Appellant urges, more specifically, that (1) the defense had offered the testimony for a non-hearsay purpose, and that (2) under the rule of completeness, the testimony was needed to give the jury a complete and accurate understanding of what appellant had said at the time of arrest.[4]

We agree that the trial court erred in ruling that Officer David's statement was inadmissible as hearsay. Appellant sought admission of the statement not for the truth of what he said but for the fact that the statement was made. *See, e.g., Puma v. Sullivan,* 746 A.2d 871, 876 (D.C. 2000). Officer David's testimony, in other words, would not have been admitted to prove that appellant had gone to a shooting range and afterwards left his gun in the car innocently, but instead to prove

---

4. Appellant also argues that the statement should have been admitted as a prior consistent statement because his credibility was undermined by Officer Franchak's testimony. *See Reed v. United States,* 452 A.2d 1173, 1180–81 (D.C.1982); *Rease v. United States,* 403 A.2d 322, 327 (D.C.1979). He further contends that the rule of curative admissibility also compelled admission of his statement to Officer David. *See Middleton v. United States,* 401 A.2d 109, 126 (D.C.1979). In view of our finding error under the rule of completeness, however, we need not address these other contentions.

only that he had given that account to the officer when arrested.

■ We turn, then, to the rule of completeness. "When part of a statement has been admitted in evidence, the rule of completeness allows a party to seek admission of the other parts or the remainder as a matter of fairness." *Samad v. United States,* 812 A.2d 226, 233 (D.C.2002); FED. R. EVID. 106.[5] "The rule was designed to prevent parties from distorting the admitted portions by taking them out of context and, to that extent, misrepresenting the whole of the statement by only introducing part of it." *Id.* (quoting *Henderson v. United States,* 632 A.2d 419, 426 n. 17 (D.C.1993)). The rule, however, is not absolute. *See Samad,* 812 A.2d at 233; *Henderson,* 632 A.2d at 425. The rule of completeness "allows a party to introduce only so much of the remainder of a document or statement already received as is germane to an issue at trial." *Warren v. United States,* 515 A.2d 208, 211 (D.C.1986); *Henderson,* 632 A.2d at 425. The rule is violated "only where admission of the statement in its edited form distorts the meaning of the statement or excludes information substantially exculpatory of the declarant." *Butler, supra* note 5, 614 A.2d at 882.

■ Although the decision with respect to admission of omitted parts falls within the sound discretion of the trial court, in order to implement the fairness purpose underlying the rule, the trial judge, upon request, *"must* admit additional portions [of a defendant's statement] that 'concern the same subject and explain the part already admitted.'" *Samad,* 812 A.2d at 233 (quoting *Henderson,* 632 A.2d at 426 (emphasis in original)); *Warren,* 515 A.2d

at 210; *see also Johns v. United States,* 434 A.2d 463, 475 (D.C.1981) (where defendant's admission that she stabbed decedent, followed by her claim of self-defense, was a continuous though interrupted statement at the police station, defendant was entitled to have the entire statement put in evidence).

■ At trial, defense counsel proffered to the trial court that she should be allowed to question Officer David regarding statements appellant had made to him at the time of his arrest, in order to impeach Officer Franchak's testimony that appellant had not mentioned having a Maryland permit for the gun. Counsel sought to do so in order to correct an inference that the jury might draw, namely, that, at the time of arrest, appellant had not offered an explanation for the gun's presence in the car, and thus that his trial testimony to that effect was likely to have been made up later in order to enhance his defense. *See Reams v. United States,* 895 A.2d 914 (D.C.App.2006) ("the possibility of an adverse inference by the jury ... required the jury to hear the entire [statement] under the completeness rule"). There can be no question that, if the trial court had granted the defense request, Officer David would have had to repeat the testimony that he had given at the suppression hearing, supra note 3, where David confirmed that appellant had explained to him why the gun was in the car: "That's when he went ahead and uttered, you know, well, he stated that he had you know, he went to the shooting range yesterday, and that he forgot and left the gun inside the vehicle."

Why was this testimony about the reason for the gun in appellant's car so impor-

---

5. Rule 106 states: "When a writing or recorded statement or a part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." *See Butler v. United States,* 614 A.2d 875, 882 (D.C.1992):

tant? One of the elements required for conviction of CPWL, UF, and UA is that the accused possessed the firearm and the ammunition "knowingly and intentionally." D.C.Code § 22–4504 (CPWL); *id.*, § 7–2502.01(UF); *id.*, § 7–2506.01(UA); CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Nos. 4.70, 4.73, 4.74 (4th ed.1993). Appellant, therefore, was attempting to demonstrate, by the fact that he had made the statements about the gun to Officer David at the time of arrest, that he had not knowingly and intentionally carried the pistol or the ammunition into the District of Columbia and thus could not be found guilty of CPWL, UF, and UA. Officer Franchak's testimony, however, implied that appellant had not said anything about the presence of the gun upon his arrest. Thus, testimony by Officer David contradicting that implication would have tended to undermine the inference the jury might otherwise have drawn that appellant had concocted the gun story for the first time at trial.

We agree with appellant that the trial court erred in rejecting applicability of the rule of completeness. The government's theory of the case was that appellant had kept the gun in the vehicle in order to protect the marijuana in the trunk. Appellant's innocent explanation for why the gun was in the car tended to undermine that theory and thus was highly relevant to the defense, not only for refuting the intent element of the gun and ammunition offenses but also for rebutting appellant's alleged awareness of the marijuana in the trunk—placed there, under appellant's theory, in Marco's black plastic bag.

■ The question then becomes: reversible—or harmless—error?[6] We agree that omission of the proffered statement, especially in light of the government's insistence in closing argument that appellant had made up his gun story, tended to prejudice the defense. Nonetheless, we conclude that this prejudice was minimal to the point of harmlessness under *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). *See Henderson,* 632 A.2d at 432 (*Kotteakos* test applies to violations of rule of completeness).

In the first place, at the trial, the prosecutor never disputed appellant's testimony that he had made the statement explaining the gun to Officer David at the time of arrest, as appellant testified. Appellant was able to clarify that, although Officer Franchak had not heard appellant's explanation at the scene, his partner, Officer David, had heard it. If defense counsel had worried that this unchallenged testimony had not registered with the jury, counsel in her own closing argument could have reminded the jury of the government's failure to question the veracity of that testimony. Counsel did not make that point to the jury, however, leaving us to conclude that any prejudice from omission of the requested testimony was minimal.

Second, although the government relied on the gun as evidence that appellant must have been protecting marijuana that he knew was in his trunk—and thus possessed it unlawfully—any doubt about the intent with which appellant carried the

---

**6.** The government asks for plain error, not harmless error, review because defense counsel sought admission of Officer David's statement for "impeachment," not to satisfy the rule of completeness. The trial court, however, as indicated in the colloquy set forth in Part II, understood the import of counsel's request as a desire to complete the factual picture for the jury, and thus we find harmless error analysis the proper standard of review.

gun, derived from his firing range story, did not obviate the fact that appellant not only had a substantial quantity of marijuana in the trunk of his own car, but also was carrying ziploc bags in his glove compartment of a type that experts testified were regularly used for distributing marijuana.[7] Appellant never expressed ignorance of that evidence, and its obvious connection with the marijuana in his trunk created powerful evidence of guilt that Officer David's requested testimony would not have effectively rebutted. Furthermore, appellant's testimony suggesting that the large quantity of marijuana must have belonged to "Marco," who apparently was willing to entrust it to appellant while Marco left the scene, was not a particularly plausible story, absent corroboration.

Finally, appellant testified that he had forgotten about the loaded gun that he had left in his car the night before and denied that the handle of the gun was visible in the car. Both Officers Franchak and David testified, to the contrary, that the gun was "sticking up" from the console. Appellant's credibility as to forgetting the gun, therefore—especially a gun still loaded after its use at the firing range was long over—was substantially rebutted.

Accordingly, despite the two evidentiary errors rejecting Officer David's testimony as hearsay and as unnecessary to satisfy the rule of completeness, we find the errors harmless and affirm appellant's convictions.

*So ordered.*

---

**7.** Detective Anthony Washington of the MPD Major Narcotics Branch estimated the street value of the marijuana—between $1,100 and

$1,300—based on the number of ziploc bags found in the car.