*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CM-187


KEVIN GREEN, APPELLANT,


V.


UNITED STATES, APPELLEE.


Appeal from the Superior Court
of the District of Columbia
(DVM-1962-15)

(Hon. Zoe Bush, Trial Judge)

(Submitted May 18, 2017                                    Decided June 13, 2019)

*Rupa Puttagunta* for appellant.

*Anne Y. Park*, Assistant United States Attorney, with whom *Channing D. Phillips*, then United States Attorney, and *Elizabeth Trosman*, *Elizabeth H. Danello*, and *Brittany Keil*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and EASTERLY, *Associate Judges*, and STEADMAN, *Senior Judge*.

EASTERLY, *Associate Judge*:  Kevin Green appeals from his conviction after a bench trial for simple assault[1] following an altercation he had with Krystal Walker, a former romantic partner and the mother of his child.  We focus on his claim that his Sixth Amendment right to confront the witnesses against him was violated when the trial court denied him the opportunity to recross-examine Ms. Walker after the government, on redirect and at the trial court's invitation, played a recording of Ms. Walker's call to 911 and moved it into evidence.  Because the recording contained new, material information in this she-said-he-said case— where the issue was whether the government disproved Mr. Green's claim of self-defense by establishing that he was the first aggressor or used excessive force—we hold that Mr. Green's constitutional right was violated and that this violation was not harmless beyond a reasonable doubt.  Accordingly, we reverse.

## I.    Facts and Procedural History

The prosecution theory was that Mr. Green attacked Ms. Walker while she was packing to move out of their shared apartment.  The defense theory was that Ms. Walker incurred her injuries when she attacked Mr. Green and he tried to fend

---

[1]  D.C. Code § 22-404(a)(1) (2013 Supp.).

her off.  The government called two witnesses:  the officer who responded to the apartment after the incident, and Ms. Walker, who testified that Mr. Green had escalated a verbal altercation into a physical one by pushing her into walls (in one instance with enough force to leave a hole) and throwing her against a kitchen countertop.  During Ms. Walker's direct examination, the government made no mention of her call to 911, did not identify it as an exhibit, and did not seek to move the recording into evidence.

On cross-examination, defense counsel sought to demonstrate that Ms. Walker's account of the incident was subject to question.  Specifically, defense counsel sought to elicit testimony from Ms. Walker about certain statements that she had made when she called the police.  When Ms. Walker—who acknowledged that she might be confusing this incident with another and was uncertain about the sequence of events—informed counsel that she did not remember what she had told the 911 operator, counsel refreshed her recollection with snippets of the recording.[2]  Ms. Walker then testified about what she had told the police over the

---

[2]  On more than one occasion the court noted that it could not hear the recording, but there was no need for the court to hear it in light of its limited function as a memory aid for the witness.  1 McCORMICK ON EVID. § 9 (7th ed.) (explaining that items "used to refresh are not substantive evidence that can be used to support a finding of fact.  They are merely memory joggers or aids");

(continued…)

phone. Counsel did this three times.[3] Counsel never impeached Ms. Walker directly with the recording.

Thereafter, the trial court invited the government to move the full 911 recording into evidence, which the government did during its redirect of Ms. Walker.[4] Both before and after the call was played,[5] defense counsel repeatedly

---

(…continued)
*United States v. Weller*, 238 F.3d 1215, 1221 (10th Cir. 2001) ("[A]nything may be used to refresh a witness'[s] recollection, even inadmissible evidence.").

[3] Counsel elicited testimony from Ms. Walker that she had told the 911 operator: (1) "I never touched him," which contradicted her testimony at trial that she had "tussle[d]" with Mr. Green but only in self-defense; (2) that Mr. Green had a history of aggression towards the police, information that counsel suggested Ms. Walker conveyed to bias the police against Mr. Green; and (3) that toward the end of the call, "he [Mr. Green] just left out," even though she had testified at trial that Mr. Green was out on the sidewalk while she was on the phone with the 911 operator and that she was yelling at him from the window of their third-floor apartment.

[4] The court and counsel had a lengthy discussion about whether the recording was admissible under the rule of completeness and whether the statements on the tape were admissible under exceptions to the rule against hearsay for present sense impressions and excited utterances. See note 12 *infra*. In addition to arguing that the recording was inadmissible, counsel at one point offered to try to reach a stipulation with the government to obviate the admission of the full recording, but the court declined the offer, stating, "That's awfully generous of you. I still want to hear the tape."

[5] The court admitted the first 3 minutes of the call but, for reasons that are not clear, excluded the final 10 seconds.

asked the court to permit recross-examination of Ms. Walker.[6] The trial court rejected these requests. The only statement the court made in the way of explanation came after counsel's last request for recross:

> I heard it for the first time. You didn't. You had the tape. You played what you wanted to play on the tape. You asked her about what you wanted to play of the tape. And I haven't heard anything so far that would give me any reason to allow you to recross the witness.

## II. Analysis

A foundation of our adversarial process is the ability of both parties to present, and challenge, live witnesses with personal knowledge of the events or issues in question. In criminal cases, a defendant's right to confront the witnesses against him is protected by the Sixth Amendment. U.S. CONST. amend. VI. Generally, this right is satisfied if defense counsel is given the opportunity to cross-examine the government's witnesses. *See Guzman v. United States*, 769 A.2d 785, 790 (D.C. 2001); *accord Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986); *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974).

---

[6] Earlier in the trial, when the government introduced new evidence during its redirect examination of a police officer—a photograph of Mr. Green on the day of the incident showing a scratch on his chin—the court told defense counsel "I don't do recross." The court then reconsidered and allowed defense counsel to recross the witness about the photograph.

The prosecution, which bears the burden of proof, *see In re Winship*, 397 U.S. 358, 364 (1970); *Conley v. United States*, 79 A.3d 270, 278 (D.C. 2013), generally presents its affirmative case through direct examination of its witnesses. 1 McCORMICK ON EVID. § 32 (7th ed.) (explaining that "an attorney who calls a witness is normally required to elicit on the witness's first direct examination all the testimony that the attorney wishes to prove by the witness," and that this rule "is in the interest of fairness and efficiency"). Defense counsel is then given the opportunity to cross-examine the government's witnesses about "those matters that are raised by the direct examination," *Guzman*, 769 A.2d at 790, including matters related to a witness's credibility and reliability, *id.*; *see also In re C.A.*, 186 A.3d 118, 122 (D.C. 2018); *Jones v. United States*, 853 A.2d 146, 152 (D.C. 2004). At the conclusion of cross-examination, the government can request an opportunity for redirect examination, which is usually restricted by the scope of cross-examination; this generally concludes the witness's testimony. *Singletary v. United States*, 383 A.2d 1064, 1073 (D.C. 1978) (explaining there is "generally no constitutional right to recross-examine a witness, since the scope of the redirect examination is limited to matters which were first raised on cross-examination, to which the opposing party is merely responding"); *see also Brown v. United States*, 763 A.2d 1137, 1140 (D.C. 2000) (explaining the proper scope of redirect examination); 1 McCORMICK ON EVID. § 32 (7th ed.) ("[T]he consensus is that the

party's examination [on redirect] is typically limited to answering any new matter drawn out in the adversary's immediately preceding examination.").

If, however, "material new matters are brought out on redirect examination . . . the [C]onfrontation [C]lause of the Sixth Amendment mandates that [the defendant] must be given the right of recross-examination on the new issues." *Singletary*, 383 A.2d at 1073; *accord Hilton v. United States*, 435 A.2d 383, 389 (D.C. 1981). Simply stated, if redirect functions like a new direct examination, then recross-examination is as constitutionally essential as cross-examination.[7]

Here, we must determine, de novo, whether "material new matters" were raised during the government's redirect of Ms. Walker. *Singletary,* 383 A.2d at 1073; *Carrington v. District of Columbia*, 77 A.3d 999, 1003 (D.C. 2013) ("This court reviews de novo whether the admission of certain evidence violates a

---

[7] For this reason, we assume the trial court's earlier statement—"I don't do recross"—was one of preference, not policy (the court, in fact, properly allowed recross in that earlier instance, see note 6 *supra*). But in light of the constitutional concerns detailed above and our holding in this case, that preference requires reconsideration.

defendant's constitutional rights under the Confrontation Clause." (emphasis omitted)).[8] We conclude that the 911 recording was such a matter.

The recording itself was unquestionably new. As the government concedes, no part of it had been admitted into evidence before the government moved the recording in its entirety into evidence on redirect. Defense counsel only played portions of the 911 call to refresh Ms. Walker's recollection and to permit her to give her own testimony about what she had said during the call. Thus, *none* of the recording was properly before the factfinder at the beginning of the government's redirect examination.[9]

In addition, the content of the call and the purpose for which the government offered it were material. Although defense counsel elicited testimony from Ms.

---

[8] The government asserts that our review is solely for abuse of discretion. But we made clear in *Singletary* the trial court's discretion to grant (or deny) recross relates only to "recross-examination as to matters *not* covered on redirect examination." 383 A.2d at 1073 (emphasis added).

[9] The court's observation that defense counsel "had the tape" and "played what [he] wanted on the tape" on cross-examination, and its suggestion that denial of recross was warranted because the defense had sandbagged the court, is thus unsupported by the record. Counsel had not "played the tape" in any evidentiary sense. Indeed, it would have been improper for him to do so. *Wilkins v. United States*, 582 A.2d 939, 942 (D.C. 1990) (explaining that under District law, as under federal law, it is "patent error" to "read a witness'[s] prior statement aloud for the purpose of refreshing recollection").

Walker on cross-examination about three specific statements she had made to the 911 operator, the purpose of defense counsel's questioning was not to elicit her contemporaneous narrative of the incident, but rather to highlight inconsistencies in her testimony and showcase her unreliability as a narrator. See note 3 *supra*. By contrast, the government did not, as it asserts, use the recording "merely [to] follow[] up" on defense counsel's particular lines of inquiry.[10] Instead, the government—which introduced almost the entire three minute and ten second recording and then rested its case without asking Ms. Walker any questions about its contents—used the recording to achieve a different purpose: to inculpate Mr. Green with a new, nearly contemporaneous account of the incident.[11] As the government argued in closing,

> [t]he Court heard that 911 call. The Court could hear her voice, could hear the pace of Ms. Walker's voice, could hear the breathing on the tape. She was calling 911, you could hear her mention that she had bruises, that she had injuries, and that she needed help[.]

---

[10] Accordingly, the facts of the cases the government cites are distinguishable. *See Tyer v. United States*, 912 A.2d 1150, 1160, 1162 (D.C. 2006); *Fisher v. United States*, 779 A.2d 348, 356 (D.C. 2001); *Singletary*, 383 A.2d at 1074–75 (D.C. 1978).

[11] In addition to providing near contemporaneous evidence regarding the incident, Ms. Walker made statements to the 911 operator about a restraining order between the parties and indicated that the police had been called to the house in the past. The admissibility of this new prior bad acts evidence, *Malloy v. United States*, 186 A.3d 802, 809–10 (D.C. 2018), was never examined, but at a minimum this evidence was unquestionably an appropriate subject for cross-examination, *see Davis*, 415 U.S. at 315–16.

We also cannot agree with the government's alternative arguments, either that this evidence was "cumulative" of the rest of the government's case, or that defense counsel had any obligation to "explore" the inculpatory content of the then-unadmitted recording on cross-examination.[12]

Because we conclude that, on these facts, Mr. Green's Sixth Amendment rights were violated when the trial court denied his request for recross-examination, we must reverse unless the government can show that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967); *Blunt v. United States*, 863 A.2d 828, 836 (D.C. 2004). The government

---

[12] Whether the government should have been able to admit the recording of the 911 call on redirect is a distinct question. The parties have focused their arguments on the rule of completeness, which manifestly does not apply since no part of the call was admitted until the government moved it into evidence. *Cox v. United States*, 898 A.2d 376, 381 (D.C. 2006) ("When part of a statement *has been admitted in evidence*, the rule of completeness allows a party to seek admission of the other parts or the remainder as a matter of fairness." (citation omitted) (emphasis added)); *see also* 1 MCCORMICK ON EVID. § 9 n.24 (7th ed.) ("Since the real evidence is the witness's testimony from refreshed memory, the exhibit [used to refresh their recollection] is not formally admitted into evidence; rather, it remains an exhibit 'for identification.'"). The government also argues that the call was properly admitted under the present sense impression and excited utterance exceptions to the rule against hearsay, but we need not determine if the 911 call would be admissible under our interpretation of those exceptions, *see Gabramadhin v. United States*, 137 A.3d 178, 183–84 (D.C. 2016); *Mayhand v. United States*, 127 A.3d 1198, 1208–09 (D.C. 2015), because we conclude that Mr. Green is entitled to reversal on his Confrontation Clause claim.

has not carried that burden here. The only two witnesses to the altercation were Ms. Walker and Mr. Green. And the only questions were whether Ms. Walker was telling the truth when she accused Mr. Green of attacking her and whether the government had disproved Mr. Green's claim that he acted in self-defense without excessive force. Although the precise basis of the trial court's judgment of guilt—whether Mr. Green was the first aggressor or whether he employed excessive force—is not altogether clear, either way, the government's case rested on the court's assessment of Ms. Walker's credibility. Ms. Walker was not a strong witness. Indeed, she admitted that she was unsure if she was confusing details of this incident with an earlier altercation and represented that her memory of the incident "got[] better" over the course of the trial. As manifested by the government's repeated references to the 911 recording in its closing, it was thus beneficial to the government to be able to introduce a near-contemporaneous report of the incident in the form of the recorded 911 call, and harmful not to give the defense the opportunity to cross-examine Ms. Walker about its contents.

The government highlights the fact that the court never expressly referred to the 911 call in its findings of fact. But the trial court twice mentioned that Ms. Walker had made a 911 call in discussing the evidence, and while the court did not specifically allude to the content of that call, it was nonetheless part of the totality

of the evidence bearing on credibility. Moreover, the government overlooks the reason the recording was admitted into evidence: the court wanted to hear it.[13] As noted above, the court complained that it could not hear the recording when defense counsel played snippets to refresh Ms. Walker's recollection, see note 2 *supra*; it then invited the government to move the full recording into evidence even though, until that time, the government had shown no interest in using the recording in support of its affirmative case. Against this backdrop, we cannot conclude that the admission of the 911 recording without an opportunity for recross-examination was harmless beyond a reasonable doubt.[14]

For the foregoing reasons, we reverse the judgment of the Superior Court and remand for further proceedings consistent with this opinion.

*So ordered.*

---

[13] Whether the court should have signaled to the parties the evidence it thought might be important and that it wanted to be presented was not raised as an issue in this case.

[14] Because we reverse on this ground, we do not address Mr. Green's other, unpreserved, argument that a police officer testifying for the government provided improper expert testimony. We do not expect this testimony to be an issue at any retrial because it was given on cross-examination and was subject to a seemingly legitimate objection that it was nonresponsive to defense counsel's question.